No. 13-1076

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

CALIFORNIA CONSTRUCTION TRUCKING
ASSOCIATION, INC.; DELTA CONSTRUCTION
COMPANY, INC.; SOUTHERN CALIFORNIA
CONTRACTORS ASSOCIATION; NORMAN R.
"SKIP" BROWN, WILLIAM E. DAVIS;
PACIFIC LEGAL FOUNDATION,

Petitioners,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

Respondent.

On Petition for Review of 78 Fed. Reg. 5347 (Jan. 25, 2013)

**PETITIONERS' OPENING BRIEF**

M. REED HOPPER
  D.C. Circuit Bar No. 44739
THEODORE HADZI-ANTICH
  D.C. Circuit Bar No. 53056
  Pacific Legal Foundation
  930 G Street
  Sacramento, California 95814
  Telephone:  (916) 419-7111
  Facsimile:  (916) 419-7747
Counsel for Petitioners

## CERTIFICATE AS TO PARTIES, RULINGS,
## AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), Petitioners state as follows:

The Petitioners challenge the denial of their Petition for Reconsideration of a nationally applicable joint rulemaking of the United States Environmental Protection Agency ("EPA") and the National Highway Traffic Safety Administration ("NHTSA"), published at 75 Fed. Reg. 25,324 (May 7, 2010), entitled, "*Light Duty Vehicle Greenhouse Gas Emissions Standards and Corporate Average Fuel Efficiency Standards*" (the "Car Rule").

**(A) Parties and *Amici***

**PETITIONERS**

Delta Construction Company, Inc.; Southern California Contractors Association; California Dump Truck Owners Association (now California Construction Trucking Association, Inc.); Norman R. ("Skip") Brown; William E. Davis, and Pacific Legal Foundation.

**RESPONDENT**

United States Environmental Protection Agency.

**INTERVENORS**

There are no intervenors at this time.

- i -

### *AMICI*

There are no amici at this time.

### (B) Rulings Under Review

These petitions for review challenge the nationally applicable Car Rule, 75 Fed. Reg. 25,324 (May 7, 2010).

### (C) Related Cases

**Case Nos. 11-1428, 11-1441 and 12-1427**:  On February 4, 2013, the Court ordered that three challenges to the joint EPA/NHTSA rule governing greenhouse gas emissions from medium- and heavy-duty vehicles (the "Truck Rule") be coordinated with the instant case, such that briefing of the Truck Rule challenges and the instant Car Rule challenge will occur on the same schedule, and oral argument in the cases will be scheduled on the same day before the same panel.  Doc. 1478250.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, and Circuit Rule 26.1, the respective Petitioners provide the following disclosures:

Delta Construction Company, Inc., is a California corporation that provides road construction services. Delta Construction Company, Inc., has no parent company, and no publically held company has a 10% or greater ownership interest in it.

Southern California Contractors Association, Inc., is a non-profit trade organization that represents and promotes the interest of union contractors and their suppliers. The Southern California Contractors Association, Inc., has no parent company, and no publicly held company has a 10% or greater ownership interest in it.

The California Construction Trucking Association, Inc. (formerly California Dump Truck Owners Association) is a trade association representing the interests of small and large trucking companies in California. The California Construction Trucking Association, Inc., has no parent company and no publicly held company has a 10% or greater ownership interest in it.

Norman R. Brown is an individual who resides in California.

William E. Davis is an individual who resides in California.

Pacific Legal Foundation is the oldest and largest public interest law firm of its kind in America. Founded in 1973, PLF provides a voice in the courts for mainstream Americans who believe in limited government, private property, individual freedom, and free enterprise. One of PLF's objectives is to ensure that government agencies comply with the constitutional and statutory mandates under which they operate. Headquartered in Sacramento, California, PLF has branch offices in Washington and Florida.

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES . . . . . . . i

CORPORATE DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

GLOSSARY OF ABBREVIATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiii

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATUTES, REGULATION, AND EXECUTIVE ORDER . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE AND FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

STANDING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

  I.  EPA VIOLATED A STATUTORY MANDATE WHEN
     IT FAILED TO SUBMIT THE CAR RULE TO THE
     SCIENCE ADVISORY BOARD FOR PEER REVIEW . . . . . . . . . . . . . . . 8

     A.  Argument One:  By Failing To Submit the Car Rule
        to the Science Advisory Board for Peer Review, EPA
        Violated a Nondiscretionary Statutory Mandate . . . . . . . . . . . . . . . . . . 8

         1.  The Plain Language of the SAB Statute Required
            EPA To Submit the Car Rule to the Science Advisory
            Board for Peer Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Page

a.   The Car Rule Is Both a "Standard" and a "Regulation". . . . . . 11

b.   EPA Provided the Car Rule to "Other" Federal
     Agencies for Formal Review and Comment
     Before It Was Promulgated. . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

c.   The Car Rule Was Never "Made Available"
     to the Science Advisory Board for Peer Review. . . . . . . . . . . . 15

2.  The Science Advisory Board Peer Review Mandate
    Is Not Subject to the Judicial Review Constraints on
    EPA's Violations of Clean Air Act Procedural Requirements. . . . . 17

3.  EPA's Failure To Submit the Car Rule to the
    Science Advisory Board Was Not Harmless. . . . . . . . . . . . . . . . . . 22

B.  In the Alternative, Argument Two:  EPA's Failure To
    Submit the Car Rule to the Science Advisory Board
    for Peer Review Was So Serious and Related to Matters
    of Such Central Relevance That There Is a Substantial
    Likelihood the Rule Would Have Been Significantly
    Changed by EPA If Peer Review Had Been Sought . . . . . . . . . . . . . . . 24

C.  The Decision in *Coalition for Responsible Regulation,
    et al., v. Environmental Protection Agency* Regarding
    the Endangerment Finding Does Not Constrain This
    Court from Ruling in Favor of the Petitioners in
    Connection with This Challenge to the Car Rule. . . . . . . . . . . . . . . . . 28

II.  THE PETITION FOR RECONSIDERATION
     SHOULD NOT HAVE BEEN DENIED. . . . . . . . . . . . . . . . . . . . . . . . . 31

A.  The Petition for Reconsideration Was Timely Filed. . . . . . . . . . . . . . . 31

B.  The Petition for Reconsideration Raised Issues That
    Were of Central Relevance to the Outcome of the Car Rule. . . . . . . . . 33

**Page**

1.  Argument 1:  EPA's Utter Failure To Comply with
    Its Nondiscretionary Duty To Submit the Car Rule
    to the Science Advisory Board Is Centrally Relevant
    to the Outcome of the Rule. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

2.  Argument 2:  In the Alternative, There Is a
    Substantial Likelihood That the Car Rule Would
    Have Been Significantly Changed If EPA Had
    Submitted It to the Science Advisory Board for
    External Peer Review, Making EPA's Failure
    Centrally Relevant to the Outcome of the Rule . . . . . . . . . . . . . . . 34

III.   THE CAR RULE SHOULD BE REMANDED AND VACATED. . . . . . . 37

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

CERTIFICATE OF COMPLIANCE WITH RULE 32(a). . . . . . . . . . . . . . . . . 40

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

ADDENDUM

## TABLE OF AUTHORITIES

**Page**

### Cases

*American Petroleum Inst. v. Costle*,
  665 F.2d 1176 (D.C. Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 15-16, 18-20,
                                                                22, 25, 30, 33, 36

*Americans for Safe Access v. Drug Enforcement
  Administration*, 706 F.3d 438 (D.C. Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Appalachian Power v. EPA*, 208 F.3d 1015 (D.C. Cir. 2000). . . . . . . . . . . . . . . 12

*Bennett v. Spear*, 520 U.S. 154 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 17, 34

*Cement Kiln Recycling Coalition v. EPA*,
  255 F.3d 855 (D.C. Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984). . . . . . . 6, 10-11, 16, 25, 32

*Coalition for Responsible Regulation v. EPA*,
  684 F.3d 102 (D.C. Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20, 27-30

*Cooper Industries, Inc. v. Aviall Services, Inc.*,
  543 U.S. 157 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Ctr. For Energy & Econ. Dev. v. EPA*,
  398 F.3d 653 (D.C. Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*ETSI Pipeline Project v. Missouri*, 484 U.S. 495 (1988). . . . . . . . . . . . . . . . . . 17

*Federal Power Commission v. Transcontinental
  Gas Pipe Line Corp.*, 423 U.S. 326 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Authorities upon which we chiefly rely are marked with asterisks.

**Page**

*Food and Drug Administration v. Brown & Williamson*,
    529 U.S. 120 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Illinois State Bd. of Elections v. Socialist Workers Party*,
    440 U.S. 173 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*\*Kennecott Corp. v. EPA*, 684 F.2d 1007 (D.C. Cir. 1982). . . . . . . . . . . . 6, 25, 36

*\*Lopez v. Davis*, 531 U.S. 230 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Meyerhoff v. United States EPA*, 958 F.2d 1498 (9th Cir. 1992). . . . . . . . . . . . . 10

*Moskal v. United States*, 498 U.S. 103 (1990). . . . . . . . . . . . . . . . . . . . . . . 9, 27, 35

*National Association of Home Builders v. Defenders of Wildlife*,
    551 U.S. 644 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*New Jersey v. EPA*, 626 F.2d 1038 (D.C. Cir. 1980). . . . . . . . . . . . . . . . . . . . . 34

*\*Parsons Steel, Inc. v. First Alabama Bank*,
    474 U.S. 518 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-20, 30

*Sierra Club v. EPA*, 292 F.3d 895 (D.C. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . 8

*\*Small Refiner Lead Phase-Down Task Force v. EPA*,
    705 F.2d 506 (D.C. Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21

*Sprint Corp. v. Fed. Commc'n Comm'n*,
    315 F.3d 369 (D.C. Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Stapf v. United States*, 367 F.2d 326 (D.C. Cir. 1966). . . . . . . . . . . . . . . . . . . . 29

*\*Sugar Cane Growers Co-Op of Florida v. Veneman*,
    289 F.3d 89 (D.C. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . 33-34, 37-38

*Thomas v. New York*, 802 F.2d 1443 (D.C. Cir. 1986),
    *cert. denied*, 482 U.S. 919 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Page**

*United States ex rel. Arant v. Lane*, 245 U.S. 166 (1917). . . . . . . . . . . . . . . . . . 29

*United States v. Kirby*, 74 U.S. 482 (1868).. . . . . . . . . . . . . . . . . . . . . . . . . 17, 32

**United States Constitution**

Article III.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Federal Statutes**

5 U.S.C. § 551(4).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    § 702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    § 706. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

42 U.S.C. § 4265. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

    § 4321. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    § 4365. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33-34

*   § 4365(c)(1).. . . . . . . . . . . . . . . . . . . 1, 3, 5, 9, 12, 14-15, 17, 19, 24, 29, 34-35

    § 4365(c)(2).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-11, 27, 35

    § 7521(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

    § 7607(b)(1).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    § 7607(d)(7)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 32

    § 7607(d)(8).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5, 25, 28, 30, 34

    § 7607(d)(9).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

49 U.S.C. § 32902.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 29

**Page**

§ 32902(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

§ 32902(j). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**Federal Regulation**

40 C.F.R. § 1.25(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 35

**Federal Register**

74 Fed. Reg. 49,454 (Sept. 28, 2009). . . . . . . . . . . . . . . . . . . . . . . . 32

75 Fed. Reg. 25,324 (May 7, 2010). . . . . . . . . . . . . . . . . . . . . . . . 1, 11

75 Fed. Reg. 25,671 (May 7, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . 12

78 Fed. Reg. 5347 (Jan. 25, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Rule of Court**

D.C. Cir. Rule 28(a)(7). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Miscellaneous**

Conley, Joe G., *Conflict of Interest and the EPA's
Science Advisory Board*, 86 Tex. L. Rev. 165 (2007). . . . . . . . . . . . . . . . . 10

Dwyer, Lynn E., *Good Science in the Public Interest:
A Neutral Source of Friendly Facts?*, 7 Hastings
W.-Nw. J. Envtl. L. & Pol'y 3 (2000). . . . . . . . . . . . . . . . . . . . . . . . 27, 35

*Executive Order 12866. . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14-15, 23, 29

§ 2(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

§ 3(f)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 29

**Page**

§ 4(c)(1)(A)-(F). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

§ 4(c)(3)-(7). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

H. Rep. 95-294 (May 12, 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

H.R. Conf. Rep. 96-722 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 24

Singer, Norman J., 2A *Sutherland Statutes and*
*Statutory Construction* § 48:6 (7th ed. 2007). . . . . . . . . . . . . . . . . . . . . . . . . 20

# GLOSSARY OF ABBREVIATIONS

Administrative Procedure Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . APA

*American Petroleum Inst. v. Costle*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *API*

Clean Air Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . CAA

Delta Construction Company, Inc.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Delta

Environmental Protection Agency. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . EPA

Executive Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . EO

Freedom of Information Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . FOIA

Light-Duty Vehicle Regulations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . LDVR

National Environmental Policy Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . NEPA

National Highway Traffic Safety Administration. . . . . . . . . . . . . . . . . . . NHTSA

Office of Management and Budget. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . OMB

Pacific Legal Foundation.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLF

Science Advisory Board. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SAB or Board

## JURISDICTIONAL STATEMENT

Petitioners seek review of EPA's denial of their "Petition for Reconsideration of the Light-Duty Vehicle Greenhouse Gas Emission Standards and Corporate Average Fuel Economy Standards," dated April 21, 2011 (the "Petition for Reconsideration"). The Petition for Reconsideration was made pursuant to Section 307(d)(7)(B), 42 U.S.C. § 7607(d)(7)(B), of the Clean Air Act ("CAA"), and it asked EPA to reconsider the nationally applicable Car Rule, published in the Federal Register on May 7, 2010, at 75 Fed. Reg. 25,324, which the EPA promulgated jointly with NHTSA. EPA denied the reconsideration petition in a federal register notice published at 78 Fed. Reg. 5347 (Jan. 25, 2013). On March 25, 2013, the instant Petition for Review was filed in this Court within the requisite 60-day period under CAA § 307(b)(1), 42 U.S.C. § 7607(b)(1), and this Court has jurisdiction under that provision, as well as under 5 U.S.C. §§ 702, 706.

## STATEMENT OF ISSUES

1.      A.      Whether EPA's failure to submit the proposed Car Rule to the Science Advisory Board for external peer review requires remand and vacatur under the Science Advisory Board statute, 42 U.S.C. § 4365(c)(1), because the failure was a violation of a nondiscretionary statutory duty; or, in the alternative,

         B.      Whether EPA's failure requires remand and vacatur under a provision of the CAA, 42 U.S.C. § 7607(d)(8), because the failure was so serious and

- 1 -

related to matters of such central relevance to the Car Rule that there is a substantial likelihood that the rule would have been significantly changed if EPA had sought peer review from the Science Advisory Board.

    2.      Whether EPA was justified in denying the Petition for Reconsideration.

## STATUTES, REGULATION, AND EXECUTIVE ORDER

Pertinent statutes, a pertinent regulation, and a pertinent Executive Order are in the Addendum (Appendix A).

## STATEMENT OF THE CASE AND FACTS

This case challenges EPA's denial of the Petition for Reconsideration, in which the Petitioners asked EPA to reconsider the Car Rule because EPA failed to submit the rule for external peer review to the Science Advisory Board.

On September 15, 2010, one of the Petitioners, Pacific Legal Foundation ("PLF"), submitted a Freedom of Information Act ("FOIA") request to EPA. The FOIA request is in the Addendum (Appendix B). Among other things, PLF asked EPA to provide the following:

    2.      Any documents, memorandums, or correspondences discussing or mentioning the Science Advisory Board in connection with the proposal or promulgation of the Light Duty Vehicle Regulations (LDVR); and specifically, any documentation indicating whether EPA submitted or considered submitting the LDVR to the Science Advisory Board during the notice and comment period for the proposed LDVR or at any other time.

3.    All documents, memorandums or correspondences dealing with the question of whether EPA should submit, or should have submitted, information to the Science Advisory Board in connection with the promulgation of the LDVR.[1]

Appendix B-1.  On November 10, 2010, EPA responded to PLF's FOIA request.

EPA's response is in the Addendum (Appendix C).  The relevant portion of the

response states:  "We did not locate any documents responsive to items 2 or 3."

Appendix C-1.  Thus, EPA did not submit the proposed Car Rule to SAB for peer

review.

The Petition for Reconsideration, which is in the Addendum (Appendix D),

was filed on April 21, 2011, and asked EPA to reconsider the Car Rule on two

alternative grounds.  First, the Petition stated that EPA's utter failure to submit the

Car Rule to the Science Advisory Board for external peer review was a violation of

a nondiscretionary rulemaking duty imposed by a provision of the Science Advisory

Board statute, 42 U.S.C. § 4365(c)(1), and that, accordingly, EPA was duty-bound to

reconsider the rule after first submitting it to the Science Advisory Board for review.

Second, in the alternative, the Petition stated that EPA's failure to submit the

rule to the Science Advisory Board was so serious and related to matters of such

central relevance to the Car Rule that, under a provision of the Clean Air Act,

---

[1] "LDVR" stands for "Light Duty Vehicle Regulation," which is referred to herein as the Car Rule.

42 U.S.C. § 7607(d)(8), there is a substantial likelihood that the rule would have been significantly changed if EPA had submitted it to the Science Advisory Board for peer review, thereby requiring EPA to reconsider the rulemaking.

The Petition for Reconsideration further stated that (1) the issues raised were of central relevance to the outcome of the rule, and (2) it was impracticable to raise those issues during the public comment period on the proposed rule.

EPA denied the petition based on three assertions: (1) the objections or claims raised in the Petition could have been, but were not raised during the comment period; (2) the Petition did not raise objections of central relevance to the outcome of the rule; and (3) the Petitioners did not make a showing that the error was of such central relevance to the Car Rule that the rule would have been significantly changed if such errors had not been made. Petitioners dispute and challenge EPA's assertions. EPA's denial is in the Addendum (Appendix E).

## SUMMARY OF ARGUMENT

Congress mandated that EPA seek scientific and technical peer review of its regulatory proposals from an external blue-ribbon panel of experts, known as the Science Advisory Board (the "SAB" or the "Board"). This requirement applies to all of EPA's regulatory actions proposed under any statute that it administers. The purpose of the SAB requirement is to ensure that EPA's regulatory judgments are sound, and EPA's duty to seek peer review from the SAB is nondiscretionary. Here,

EPA promulgated the Car Rule without first making it available to the SAB for peer review, thereby violating the mandatory duty set forth in the overarching SAB statute. 42 U.S.C. § 4365(c)(1).

Alternatively, EPA violated a statutory provision located exclusively in the CAA, 42 U.S.C. § 7607(d)(8), which is applicable only to procedural violations of that Act. Assuming *arguendo* that 42 U.S.C. § 7607(d)(8) applies here, EPA's failure to submit the Car Rule to the SAB was so serious and related to matters of such central relevance to the rule that there is a substantial likelihood that the rule would have been significantly changed had EPA sought SAB peer review.

Petitions for reconsideration of a rule under the CAA may not be denied by EPA unless they (1) were untimely filed or (2) raise objections that are not of central relevance to the rule at issue. 42 U.S.C. § 7607(d)(7)(B). Here, the Petition was timely filed with EPA because it was impracticable to raise the objections during the comment period on the proposed Car Rule in that there was no indication in the proposed rule or elsewhere that EPA would fail to comply with its mandatory duty to submit the Car Rule to the SAB for external peer review. Furthermore, EPA's violation of the rulemaking requirement is of central relevance to the outcome of the Car Rule because external peer review by the SAB of the scientific and technological underpinnings of EPA's proposed rules was intended by Congress to be an essential component of all EPA rulemaking activities, the violation of which is *per se* of

- 5 -

central relevance to the rule's outcome.  Alternatively, EPA's failure to submit the rule to the SAB for external peer review created substantial uncertainty regarding what the rule would have been had the rule been submitted to the SAB for review, indicating that the rule would have been significantly changed based on SAB review. *Kennecott Corp. v. EPA*, 684 F.2d 1007, 1017 (D.C. Cir. 1982).

The Car Rule should not only be remanded to EPA but should also be vacated because (1) the injuries it causes to the Petitioners, those similarly situated, and the national economy are substantial, (2) EPA's utter failure to involve the SAB in external peer review is a serious deviation from the statutory mandate, and (3) the consequences of vacatur will not be disruptive of any lawful regulatory action or goal of the EPA.

## STANDARD OF REVIEW

The Court sets aside agency action or inaction when (1) the agency fails to comply with a nondiscretionary statutory duty, *Bennett v. Spear*, 520 U.S. 154, 172 (1997); (2) the agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law," 5 U.S.C. § 706, 42 U.S.C. § 7607(d)(9); or (3) the action contradicts congressional intent, *Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837, 843 n.9 (1984).

## STANDING

Declarations of the Petitioners are in the Addendum (Appendix F). Petitioner Delta Construction Company, Inc. ("Delta"), owns and operates a business that utilizes cars and other light-duty vehicles subject to the Car Rule, and Delta is concretely injured by the rule because the rule will increase Delta's costs of doing business by increasing the price of new cars and other light-duty vehicles used in its business when its existing vehicles reach the end of their useful lives. The relief requested will redress those injuries because the prices of the vehicles would no longer be affected by the rule. Norman Brown Decl. ¶¶ 3-10, Appendix F-6 to F-7.

Petitioners William E. Davis and Norman R. Brown are individuals who utilize and purchase cars and other light-duty vehicles for themselves and their families. The Car Rule increases their costs of replacing the vehicles when the vehicles reach the end of their useful lives, and the relief requested will redress those injuries. Davis Decl. ¶¶ 2-7, Appendix F-17 to F-18; Norman Brown Decl. ¶ 11, Appendix F-7. *See, e.g.*, *Ctr. For Energy & Econ. Dev. v. EPA*, 398 F.3d 653, 656-58 (D.C. Cir. 2005) (standing criteria for company and individual standing).

Petitioner California Construction Trucking Association, Inc., is a trade association representing businesses and individuals who are concretely injured by the Car Rule in that they utilize light-duty vehicles subject to the Car Rule, which increases their costs of doing business by increasing the price of light-duty vehicles

used in their businesses when their existing vehicles reach the end of their useful lives, and their injuries will be redressed if the Court grants the relief requested.  Lee Brown Decl. ¶¶ 2-11, Appendix F-2 to F-4; *See Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002) (criteria for associational standing).

If any one of the Petitioners has standing, the case may proceed.  *Americans for Safe Access v. Drug Enforcement Administration*, 706 F.3d 438, 443 (D.C. Cir. 2013).  Accordingly, this challenge to the Car Rule presents a "case or controversy" under Article III of the United States Constitution.  *See* D.C. Cir. Rule 28(a)(7).

## ARGUMENT

## I

## EPA VIOLATED A STATUTORY MANDATE WHEN IT FAILED TO SUBMIT THE CAR RULE TO THE SCIENCE ADVISORY BOARD FOR PEER REVIEW

**A.  Argument One:  By Failing To Submit the Car Rule to the Science Advisory Board for Peer Review, EPA Violated a Nondiscretionary Statutory Mandate**

**1.  The Plain Language of the SAB Statute Required EPA To Submit the Car Rule to the Science Advisory Board for Peer Review**

The SAB statute provides that

[for] *any* proposed criteria document, standard, limitation, or regulation, [EPA] . . . *shall* make available to the Board such proposed criteria document, standard, limitation, or regulation, together with relevant scientific and technical information in the possession of the

> Environmental Protection Agency on which the proposed action is based.

42 U.S.C. § 4365(c)(1) (emphasis added). The use of the word "shall" signifies that submittal of proposed regulatory actions to the SAB is nondiscretionary. *American Petroleum Inst. v. Costle*, 665 F.2d 1176, 1188 (D.C. Cir. 1981) ("API") ("The language of the statute indicates that making a [regulatory proposal] available to the SAB for comment is mandatory . . . .").

In an analogous context, the Supreme Court determined that Congress' use of the word "shall" in the Clean Water Act imposed a mandatory, nondiscretionary duty. *National Association of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 661 (2007) (citing *Lopez v. Davis*, 531 U.S. 230, 241 (2001)). In *Lopez*, The Supreme Court noted the significance of the fact that Congress, in the same statute, used "may" and "shall" to denote different obligations, such that "may" creates discretionary obligations, while "shall" creates nondiscretionary obligations. The same is true in the instant case, because 42 U.S.C. § 4365(c)(1) mandates that EPA "shall" submit the material to the SAB for review, but then in the very next paragraph, 42 U.S.C. § 4365(c)(2), provides that the SAB "may" give its advice and comments on the material submitted to it. Accordingly, the mandatory nature of EPA's submittal duty is clear. *See Moskal v. United States*, 498 U.S. 103, 109 (1990) (courts must give effect to every clause and word of a statute); *Bennett v. Spear*, 520 U.S. at 172

- 9 -

(describing the "rudimentary" principle of administrative law that regulatory action must comply with statutory requirements). *See also Chevron v. NRDC*, 467 U.S. at 842-43 ("First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

The plain meaning of the mandatory SAB submittal requirement is confirmed by its purpose, which is to provide the SAB an opportunity to make available "its advice and comments [to EPA] on the adequacy of the scientific and technical basis of the [regulatory proposals]." 42 U.S.C. § 4365(c)(2). SAB's mission is to provide "expert and independent advice to the [EPA] on the scientific and technical issues facing the Agency" and to assist EPA "in identifying emerging environmental problems." 40 C.F.R. § 1.25(c). *See*, Joe G. Conley, *Conflict of Interest and the EPA's Science Advisory Board*, 86 Tex. L. Rev. 165, 168 (2007) ("Congress established the EPA Science Advisory Board in 1978 to provide independent scientific and technical advice to EPA."). A key element of the SAB's mission is to render advice to EPA "on a wide range of environmental issues and the integrity of the EPA's research." *Meyerhoff v. United States EPA*, 958 F.2d 1498, 1499 (9th Cir. 1992). Thus, the SAB's purpose underscores the plain statutory language directing EPA to submit regulatory proposals to the SAB for external peer review.

- 10 -

The legislative history further illustrates Congress' intent to require EPA to submit regulatory proposals to the SAB for review. *See* Joint Explanatory Statement, H.R. Conf. Rep. 96-722, 3296 (1977) ("The first paragraph of this section *requires* the Administrator of EPA to make available to the [Science Advisory] Board any proposed criteria document, standard, limitation, or regulation together with scientific background information in the possession of the Agency on which the proposed action is based.") (emphasis added). *See Chevron*, 467 U.S. at 845 (agency interpretation of a statute is impermissible if it "is not one that Congress would have sanctioned").

### a. The Car Rule Is Both a "Standard" and a "Regulation"

Proposed EPA "standards" and "regulations" must be submitted to the SAB for peer review. 42 U.S.C. § 4365(c)(2); *See API*, 665 F.2d at 1188. The Car Rule is both a "standard" and a "regulation." It is a "standard" promulgated by EPA under 42 U.S.C. § 7521(a) ("The [EPA] Administrator shall . . . prescribe . . . in accordance with the provisions of this section, *standards* applicable to the emission of any air pollutant from any class or classes of new motor vehicles or new motor vehicle engines, which in his judgment cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare . . . .") (emphasis added). In its preamble to the final Car Rule, EPA refers to the rule as "a National Program consisting of new *standards* for light duty vehicles," 75 Fed. Reg. at 25,324

(emphasis added), and acknowledges that the standards were promulgated under 42 U.S.C. § 7521(a).  *See* 75 Fed. Reg. at 25,543.

The Car Rule is a "regulation" because it has the force of law.  A regulation, also known as a legislative rule, is "an agency statement of general or particular applicability and future effect designed to . . . prescribe law or policy."  5 U.S.C. § 551(4).  *Thomas v. New York*, 802 F.2d 1443, 1445-47 (D.C. Cir. 1986), *cert. denied*, 482 U.S. 919 (1987); *Appalachian Power v. EPA*, 208 F.3d 1015, 1024-25 (D.C. Cir. 2000).  Here, the Car Rule is "generally applicable" to manufacturers, distributors, and users of light-duty engines and vehicles and prescribes enforceable legal requirements on them, thereby constituting legally binding regulations.

### b.  EPA Provided the Car Rule to "Other" Federal Agencies for Formal Review and Comment Before It Was Promulgated

The mandatory duty to make available a proposed standard or regulation to the SAB for peer review arises when it "is provided to any other Federal agency for formal review and comment . . . ."  42 U.S.C. § 4365(c)(1).  The preamble to the final Car Rule acknowledges that the rule was submitted to the Office of Management and Budget for review because it is an economically significant regulatory action requiring OMB review.  "OMB reviewed [the Car Rule] under Executive Order 12866."  75 Fed. Reg. 25,671 (May 7, 2010).  "This action . . . is an economically significant regulatory action as defined by EO 12866."  75 Fed. Reg. at 25,541.

- 12 -

The Executive Order cited in the text of the preamble is in the Addendum

(Appendix A).  Section 3(f)(1) of the Executive Order provides that a regulatory

action is economically significant if it has an "annual effect on the economy of $100

million or more."  Appendix A-4.  For such economically significant actions, Section

2(b) of the Executive Order states:

> Coordinated review of agency rulemaking is necessary to ensure that
> regulations are consistent with applicable law, the President's priorities,
> and the principles set forth in this Executive Order, and that decisions
> made by one agency do not conflict with the policies or actions taken or
> planned by another agency. The Office of Management and Budget
> (OMB) shall carry out that review function.

Appendix A-3.  Thus, regulatory proposals having economically significant impacts

must go through a "coordinated review" overseen by the OMB.  The review requires

OMB to ensure consistency and priorities and avoid conflicts among federal agencies.

Indeed, the Executive Order specifies in painstaking detail exactly what must be

submitted to OMB for review, and prescribes an elaborate "regulatory plan" that must

consist of each significant regulatory action, including anticipated costs and benefits,

a summary of the legal basis for each action, the agency's schedule for action, and

other data.  Section 4(c)(1)(A)-(F), Appendix A-4 to A-5.  Significantly, within ten

days after OMB receives the regulatory plan from EPA, it must circulate it to "other

federal agencies" and to "the Vice President," to check for possible conflicts among

agencies, and all must follow and document their compliance with a detailed

- 13 -

procedure set forth in the Executive Order for resolving conflicts. Section 4(c)(3)-(7), Appendix A-5. A more "formal" review process is difficult to imagine. Accordingly, the proposed Car Rule was "provided" to another federal agency, namely, OMB, pursuant to Executive Order 12866, and through OMB, to other federal agencies, including the Vice President, for "formal" review, bringing the Car Rule squarely within the ambit of 42 U.S.C. § 4365(c)(1).

In addition, 49 U.S.C. § 32902(b)(1) requires the Secretary of Transportation to consult with the Secretary of Energy and EPA before prescribing or amending an average fuel economy standard. *See* Appendix A-22. In addition, 49 U.S.C. § 32902(j), requires the Secretary of Transportation to provide the Secretary of Energy "at least ten days notice" to determine whether a proposed fuel economy standard" would adversely affect the conservation goals of the Secretary of Energy." Appendix A-22. As indicated, the Car Rule is a joint rulemaking of NHTSA, which is a part of the Department of Transportation, and EPA. The preamble to the final rule acknowledges that "we submitted this final rule to the Department of Energy for review." 75 Fed. Reg. at 25,677. Certainly a statutory requirement to consult with federal agencies before the rule is promulgated constitutes "formal" federal agency review within the meaning of the SAB statute, 42 U.S.C. § 4365(c)(1).

Furthermore, the preamble to the final rule states that, pursuant to the requirements of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321,

*et seq.*, and its implementing regulations, "over 500 copies" of a draft environmental impact statement setting forth the environmental impacts of the rule were "mailed . . . [to] interested parties, including Federal, State, and local officials and agencies." 75 Fed. Reg. at 25,672.  The preamble goes on to state that "comments received during the public comment period" were "analyzed" and that the draft environmental impact statement was "revised in response to comments . . . where appropriate." *Id.* Surely seeking review of a draft environmental impact statement under NEPA from other federal agencies also qualifies as "formal" review by other federal agencies pursuant to 42 U.S.C. § 4365(c)(1).

Accordingly, review by other federal agencies mandated under Executive Order 12866, 49 U.S.C. § 32902, and NEPA collectively, or for that matter individually, qualifies as "formal" review within the meaning of 42 U.S.C. § 4365(c)(1).

### c.    The Car Rule Was Never "Made Available" to the Science Advisory Board for Peer Review

This Court has ruled that "making available" a regulatory proposal to the SAB for peer review requires that EPA "submit" the proposed regulation to the SAB.  *API*, 665 F.2d at 1189 ("[T]he statute explicitly mandates that standards be *submitted* to the Board for review.") (emphasis added).  In its denial of the Petition to Reconsider, EPA opined that, although it did not actively "submit" the Car Rule to the SAB for review, the relevant documents were "accessible or obtainable" by the SAB:

> EPA did make the proposed regulation and supporting information available to the SAB in advance of the public comment period. Documents are made available when they are "accessible" or "obtainable." Collins English Dictionary—Complete and Unabridged (Harper Collins 2003) (definition of "available"). EPA made the proposed rule and underlying support documents accessible and obtainable by publication of the proposed rule in the Federal Register, and via mass electronic dissemination by posting the proposed rule and all of the scientific and technical support documents on the Agency's web site . . . .

78 Fed. Reg. at 5,349, Appendix E-3. EPA goes on to state:

> EPA is aware that [in *API*] the D.C. Circuit, in holding that EPA had not made available a proposed regulation to the SAB, stated that EPA had not "submitted" the proposed regulation to the Board. This case, however, antedated the present period of instantaneous availability of documents via electronic dissemination. EPA believes that by publishing and posting the proposed regulation and the scientific and technical support documents those materials have been made available to the SAB.

*Id.* at n.1.

EPA's belief that it can ignore judicial precedent, thereby disregarding the fundamental constitutional principle of separation of powers, is remarkable. Contrary to this Court's decision in *API*, EPA would place the onus on SAB to chase after EPA's proposed rules rather than placing the onus on EPA to submit them to the SAB. *API*, 665 F.2d at 1189. EPA's interpretation cannot trump this Court's ruling that Congress intended to place the onus on EPA. *Chevron*, 467 U.S. at 845 (agency interpretation of a statute is impermissible if it "is not one that Congress would have sanctioned").

- 16 -

In effect, EPA's interpretation rewrites the SAB statute in accordance with its administrative predilections, something EPA is not permitted to do. *Food and Drug Administration v. Brown & Williamson*, 529 U.S. 120, 125 (2000) ("Regardless of how serious the problem an administrative agency seeks to address . . . it may not exercise its authority 'in a manner that is inconsistent with the administrative structure that Congress enacted into law.'") (quoting *ETSI Pipeline Project v. Missouri*, 484 U.S. 495, 517 (1988)). Given the fact that Congress placed the burden on EPA to make regulatory proposals available to the SAB, EPA's position that SAB members should be required to track down EPA's regulatory proposals is untenable. *See United States v. Kirby*, 74 U.S. 482, 486 (1868) ("All laws should receive a sensible construction.").

Allowing EPA to thwart Congress' will in the way EPA suggests would provide EPA with a license to ignore a rulemaking requirement mandated by statute. Such a license may not be granted. *Bennett v. Spear*, 520 U.S. at 172.

**2.  The Science Advisory Board Peer Review Mandate Is Not Subject to the Judicial Review Constraints on EPA's Violations of Clean Air Act Procedural Requirements**

The SAB submittal requirement applies not only to EPA's regulatory proposals under the Clean Air Act but to regulatory proposals made under every "authority of the Administrator." 42 U.S.C. § 4365(c)(1). Under principles established by the Supreme Court, the statutory authorities administered by EPA must be construed in

a way that makes them consistent with each other, if at all possible. *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 524 (1986) (differing statutes should be interpreted so as to be consistent).

Crucially, the SAB statute contains no limitations on judicial review of the SAB submittal requirement. At the same time, the CAA places limitations only on judicial review of rulemaking procedures mandated by the CAA itself. *Small Refiner Lead Phase-Down Task Force v. EPA*, 705 F.2d 506, 522 (D.C. Cir. 1983) (in amending the CAA in 1977, Congress "wanted to add *new* procedural protections" in the CAA while "[minimizing] disputes over EPA's compliance with the *new* procedures" in that Act, and Congress "did not intend to cut back" on statutory procedural protections set forth in statutes other than the CAA).

Under the overarching rule enunciated by the Supreme Court in *Parsons Steel*, EPA must comply with the SAB submittal requirement consistently for all of its regulatory proposals, regardless of the specific law under which a particular proposal may arise. *Parsons Steel* requires this result because the SAB submittal requirement does not distinguish among EPA's substantive regulatory authorities, but applies equally to all of them. So too, differing standards of judicial review are not sanctioned by the SAB statute.

This Court's 1981 decision in *API*, dealing with the SAB submittal requirement in the context of a CAA regulation, applied the CAA's "substantial likelihood" test

without analyzing whether another standard was more appropriate. But the 1986 Supreme Court decision in *Parsons Steel* requires this Court to apply a uniform test for SAB submittal violations, regardless of whether the underlying regulation was promulgated under the CAA or "any other authority of the Administrator." 42 U.S.C. § 4365(c)(1). Of course, the CAA's "substantial likelihood" standard cannot apply to violations of the SAB submittal requirement in connection with rules promulgated by EPA under any statutory authority other than the CAA because no other EPA-administered statute authorizes the "substantial likelihood" test under any circumstance. Accordingly, this Court's 1981 decision in *API* is superceded by the Supreme Court's 1986 decision in *Parsons Steel*, and the *API* decision must yield. 474 U.S. at 524.

Citing *API*, this Court's decision in *Coalition for Responsible Regulation v. EPA*, 684 F.3d 102 (D.C. Cir. 2012), applied the "substantial likelihood" test to the SAB submittal requirement in the context of a CAA regulation, again without analyzing whether another test, *i.e.*, one which could be applied to rulemaking under any EPA-administered statute, was more appropriate. The *Coalition for Responsible Regulation* opinion failed to recognize the conflict between *API* and *Parsons*, and mistakenly applied *API's* "substantial likelihood" test to SAB review. Accordingly, *Coalition for Responsible Regulation* also conflicts with the Supreme Court's 1986

decision in *Parsons Steel* and, just like *API*, the *Coalition for Responsible Regulation* decision must yield to *Parsons Steel* on this issue.

The legislative history of the CAA confirms this result. The report of the Standing House Committee on Interstate and Foreign Commerce (the "Committee"), which investigated the need for and crafted the language of the judicial review provisions of the CAA's 1977 amendments, is particularly instructive. *See* Norman J. Singer, *2A Sutherland Statutes and Statutory Construction § 48:6* (7th ed. 2007) ("The report of the standing committee in each house of the legislature which investigated the desirability of the statute under consideration is often used as a source for determining the intent of the legislature."). The Committee noted that the pre-1977 CAA lacked sufficient "procedural safeguards" and that

> broad administrative discretion to promulgate regulations to protect health or the environment must be restrained by thorough and careful procedural safeguards that insure an effective opportunity for public participation in the rulemaking process.

H. Rep. 95-294 at 319 (May 12, 1977). Among other things, the Committee concluded that there was a need for clearly defined procedures applicable to establishing a publicly available record as a basis for decisionmaking under the CAA. *Id*. at 320. Of special concern to the Committee were the "new" procedural requirements for cross-examination of witnesses on disputed factual issues, which were added by the 1977 CAA Amendments in connection with hearings held on

- 20 -

rulemaking proposals.  To prevent the new procedures from getting bogged down in fine points such as

> [whether] a given question involves "facts" or "policy" or whether a given fact is "legislative" or "adjudicative," . . . the committee has limited the extent to which the Administrator's decisions on *such* procedural matters may be reversed during judicial review.

*Id.* at 322 (emphasis added).  The Committee went on to state that courts may overturn EPA rulemaking under the CAA with regard to

> *such* procedural matters [only if] the procedural errors "were so serious and related to matters of such central relevance to the rule that there is a substantial likelihood that the rule would have been significantly changed if such errors had not been made."

*Id.* (emphasis added; citation omitted).  Thus, the only procedural violations subject to the high bar set by Congress are the "new" rulemaking procedures established by Congress in the 1977 CAA Amendments.  *See Small Refiner*, 705 F.2d at 522.  EPA's adherence to the rulemaking procedures mandated in the CAA is not at issue in this case.  Here, EPA utterly failed to comply with the nondiscretionary requirement to submit the Car Rule to SAB for external peer review before it was promulgated.  That failure is a violation of the SAB statute and not the CAA.  Accordingly, EPA's failure is not subject to the "substantial likelihood" standard for procedural violations of the CAA.  *Id.*

- 21 -

**3.  EPA's Failure To Submit the Car Rule to the Science Advisory Board Was Not Harmless**

EPA's failure to submit the proposed Car Rule and supporting material to the SAB at any stage distinguishes this case from an earlier case where a failure was found by this Court to be harmless.  In *API*, procedural challenges were raised against the ozone standards established by EPA.  In that case, EPA submitted two drafts of the criteria documents to the SAB and made changes to the criteria documents based on the SAB's recommendations.  *See*, 665 F.2d at 1188.  The proposed ozone standard, which was based upon the previously submitted criteria documents, was not submitted to the SAB.  In rejecting the challenge, this Court found that because the SAB had twice reviewed the criteria, which contained the scientific and technical basis for the standard, it was unlikely that review of the actual standard would have mattered.  *Id.* at 1189.  In the instant case, however, the SAB never had the opportunity to review anything.  Allowing EPA to utterly disregard the statutory mandate would send a message to EPA that it can bypass the SAB at will in connection with any rule it promulgates under the CAA.  EPA should be made keenly aware that it is required to comply with nondiscretionary statutory mandates, as every other administrative agency must do.

Furthermore, the impact of EPA's error has serious, undesirable consequences to the Petitioners.  For example, EPA acknowledges that the costs of new cars and

- 22 -

other light-duty vehicles will increase as a result of the Car Rule. 75 Fed. Reg. at

25,345. EPA also acknowledges:

> At this time EPA has no available methods to estimate potential additional effects on consumers not included in the technology cost estimates, *e.g.*, due to changes in vehicles that consumers find undesirable, shifts in consumer demand for other attributes, and uncertainties about the long term reliability of new technologies.

75 Fed. Reg. at 25,513. As a result, EPA concludes that "[a]ny consumer welfare loss

cannot be quantified at this time." *Id.* But whether or not the price increases or

consumer losses can be quantified, one thing is clear: the additional costs will be

passed on from the car manufacturers to consumers, a fact EPA assumes. "Assuming

that the full technology cost gets passed along to the consumer as an increase in price,

the technology cost . . . measures the . . . loss to the consumer." 75 Fed. Reg. at

25,513. As purchasers of new cars and other light-duty vehicles, these cost increases

will be borne by the Petitioners. Davis Decl ¶¶ 3-7, Appendix F-17 to F-18; Norman

Brown Decl. ¶ 11, Appendix F-7; Lee Brown Decl. ¶¶ 4-11, Appendix F-2 to F-4.

Moreover, when viewed from an aggregate, national perspective, the cost

increases constitute a substantial burden on the nation's economy, as EPA

acknowledges: "This action . . . is an economically significant regulatory action as

defined by EO 12866." 75 Fed. Reg. at 25,541. Because the cited Executive Order

defines "economically significant" regulatory action as having an annual effect on the

economy of $100 million or more, any notion that EPA's failure to submit the Car Rule to the SAB for external peer review was "harmless" is belied by the facts.

**B.  In the Alternative, Argument Two:  EPA's Failure To Submit the Car Rule to the Science Advisory Board for Peer Review Was So Serious and Related to Matters of Such Central Relevance That There Is a Substantial Likelihood the Rule Would Have Been Significantly Changed by EPA If Peer Review Had Been Sought**

Assuming *arguendo* that the CAA's "substantial likelihood" judicial review standard applies in the instant case, the Car Rule still must fail.  As set forth in more detail in Section I.A.1, *supra*, the plain language of the SAB statute requires that EPA submit its regulatory proposals to the SAB for peer review before they are promulgated. 42 U.S.C. § 4365(c)(1) (EPA "proposed . . . regulation[s] . . . under any . . . authority of the Administrator . . . shall" be made available to the SAB for review and comment.).  And the legislative history makes clear that the SAB's role in EPA's rulemaking process is to "be able to review conflicting claims and advise the [EPA] on the adequacy and reliability of the technical basis for rules and regulations."  Joint Explanatory Statement, H.R. Conf. Rep. 96-722 at 3295-96.   Congress' Joint Explanatory Statement goes on to state:

> Much of the criticism of the Environmental Protection Agency might be avoided if the decisions of the Administrator were fully supported by technical information which had been reviewed by independent, competent scientific authorities.

> . . . [T]he intent of [the SAB submittal requirement] is to ensure that the [SAB] is able to comment in a well-informed manner on any regulation that it so desire.

*Id.* at 3296.

Thus, congressional contemplation of a "substantial likelihood that EPA's regulatory proposals would undergo "significant change" as a result of SAB review is built into the fabric of the SAB statute, and that is why SAB submittal is "mandatory."  *API*, 665 F.2d at 1188.  "[Courts] must reject administrative constructions which are contrary to clear congressional intent."  *Chevron, U.S.A. v. NRDC*, 467 U.S. at 843 n.9.  Accordingly, even under the CAA's "substantial likelihood" standard, the uncertainty created by EPA's failure to submit the Car Rule to the SAB for peer review indicates a "substantial likelihood" that the rule would have been "significantly changed" if such errors had not been made.  42 U.S.C. § 7607(d)(8).

Such a result is compelled by *Kennecott Corp. v. EPA*.  In *Kennecott*, EPA denied an administrative petition for reconsideration by asserting that its failure to include certain documents in the rulemaking record was not significant because, even if the documents had been included, EPA would have come to the same regulatory conclusion.  This Court disagreed, stating that the "absence of those documents . . . makes impossible any meaningful comment on the merits of EPA's assertions."  *Kennecott Corp. v. EPA*, 684 F.2d at 1018.  "EPA's failure to include such documents

constitutes reversible error, for the uncertainty that might be clarified by those documents . . . indicates a 'substantial likelihood' that the regulation would 'have been significantly changed.'" *Id.* at 1018-19. Here, EPA's failure to make the proposed Car Rule available to the SAB for peer review also is reversible error because the uncertainty regarding the outcome of the SAB's review, and the attendant uncertainty regarding EPA's response thereto, indicates a substantial likelihood that the Car Rule would have been significantly changed had the SAB been consulted.

This conclusion is supported by the attached declaration of Roger O. McClellan, who served as a member of the SAB for over three decades, including years as a member of its Executive Committee and as Chairman of SAB's Clean Air Scientific Advisory Committee. McClellan Decl. ¶¶ 2-3, Appendix F-10 to F-11. Among other things, Mr. McClellan states that "[t]he SAB serves a critical gatekeeper role whose mission is to ensure that EPA's regulatory proposals are based upon sound scientific and technical principles." McClellan Decl. ¶ 11, Appendix F-14. He also states that EPA has often "changed its regulatory proposals based on review and comment by the SAB, and this has been the rule rather than the exception, which stands to reason, as the SAB was created to provide an expert reality check for EPA scientific and technical determinations that inform policy judgments." McClellan Decl. ¶ 10, Appendix F-14. Mr. McClellan concludes:

> . . . I believe that EPA leadership made a serious error in failing to submit the Car Rule and the science upon which it is based to the SAB for peer review before promulgation. In my opinion, this error was so serious and related to matters of such central relevance to the Car Rule that there is a substantial likelihood that the rule would have been significantly changed in response to advice from the SAB had it been made available to the SAB by EPA for review prior to its promulgation. . . .

McClellan Decl. ¶ 12, Appendix F-15.

Because the purpose of the SAB submittal requirement is to provide the SAB an opportunity to make available "its advice and comments [to EPA] on the adequacy of the scientific and technical basis of [regulatory proposals]," 42 U.S.C. § 4365(c)(2), Congress could not have contemplated that SAB review would be no more than a mere formality or a superfluous gesture. *Moskal*, 498 U.S. at 109 (Courts should give effect to every clause and word of a statute.). In fact, Congress contemplated that EPA's proposed CAA regulations would significantly evolve, mature, and otherwise change as a result of SAB's scientific and technical advice. Lynn E. Dwyer, *Good Science in the Public Interest: A Neutral Source of Friendly Facts?*, 7 Hastings W.-Nw. J. Envtl. L. & Pol'y 3, 6-7(2000) (peer review function of SAB intended by Congress to lead to better rulemaking). *See*, McClellan Decl. ¶¶ 10-12, Appendix F-14 to F-15. Accordingly, assuming *arguendo* the applicability of the stringent review standard for violations of procedural violations of the CAA

itself, as set forth in 42 U.S.C. § 7607(d)(8), the Car Rule should be vacated and remanded to EPA under the "substantial likelihood" test.

**C.  The Decision in *Coalition for Responsible Regulation, et al., v. Environmental Protection Agency* Regarding the Endangerment Finding Does Not Constrain This Court from Ruling in Favor of the Petitioners in Connection with This Challenge to the Car Rule**

The Petitioners are mindful of this Court's decision in *Coalition for Responsible Regulation v. Environmental Protection Agency*, where dozens of petitioners challenged EPA's finding that greenhouse gas emissions from mobile sources pose a danger to human health and welfare.  One of the challenges was based on EPA's failure to submit the endangerment finding to the SAB for peer review. The panel in that case concluded that EPA did not violate the SAB submittal requirement in connection with the endangerment finding because (1) it was "not clear" whether the finding was submitted "to any other Federal agency for formal review and comment," thereby triggering the SAB submittal duty, 684 F.3d at 124, and (2) "even if EPA violated its mandate by failing to submit the Endangerment Finding to the SAB, Industry Petitioners have not shown that this error was 'of such central relevance to the rule that there is a substantial likelihood that the rule would have been significantly changed if such errors had not been made.'"  *Id*.

For three reasons, the decision in *Coalition for Responsible Regulation* regarding the endangerment finding does not constrain this Court from ruling in favor

- 28 -

of the Petitioners in connection with the Car Rule.  First, although it may not have

been clear in *Coalition for Responsible Regulation* whether EPA sought "formal

review and comment" of the endangerment finding from another federal agency, it is

abundantly clear that EPA did seek formal review and comment of the Car Rule from

the Office of Management and Budget pursuant to Executive Order 12866, Section

3(f)(1), thereby triggering the SAB submittal requirement under 42 U.S.C.

§ 4365(c)(1).  It is also clear that formal review and comment was sought from a

variety of federal agencies under NEPA for the draft environmental impact statement,

as well as from the Secretary of Energy under 49 U.S.C. § 32902.  *See* Section

I.A.1.b, *supra.*

Second, the Court in *Coalition for Responsible Regulation* did not

categorically decide whether the SAB submittal requirement is subject to the judicial

review constraints applicable to procedural violations of the CAA.  *See Cooper

Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157, 170 (2004) (a court's silence

regarding issues does not constitute precedent); *Illinois State Bd. of Elections v.

Socialist Workers Party*, 440 U.S. 173, 183 (1979) ("Questions which 'merely lurk

in the record' are not resolved, and no resolution of them may be inferred.") (citation

omitted).  *Accord, Stapf v. United States*, 367 F.2d 326, 330 (D.C. Cir. 1966) (prior

cases that did not address the issue at hand are not precedent).  *See also*, *United States

ex rel. Arant v. Lane*, 245 U.S. 166, 170 (1917) ("[T]he mere fact that the cases were

entertained affords no ground for holding them as authoritative on the question before us . . . .").   Accordingly, *Coalition for Responsible Regulation* does not constitute precedent on the issue of whether the limitations on judicial review of procedural violations of the CAA categorically apply to EPA's failure to submit a proposed CAA rule for peer review under the separate SAB statute.   Moreover, as indicated, although *Coalition for Responsible Regulation* cited *API* approvingly for the "substantial evidence" test, it did not address the issue of whether the Supreme Court's decision in *Parsons Steel* superceded this Court's *API* decision regarding the test for violations of the SAB submittal requirement.   That issue is raised squarely here.

Third, assuming *arguendo* that the limitations on judicial review of procedural violations under the CAA apply also to the SAB submittal requirement, for the reasons set forth in Section I.B., *supra*, the Petitioners have shown that EPA's failure to submit the Car Rule to SAB for review and comment was "of such central relevance to the rule that there is a substantial likelihood that the rule would have been significantly changed if [the error] had not been made."  684 F.3d at 124 (citing 42 U.S.C. § 7607(d)(8)).  *See* McClellan Decl. ¶ 12, Appendix F-15.

- 30 -

## II

## THE PETITION FOR RECONSIDERATION
## SHOULD NOT HAVE BEEN DENIED

### A.  The Petition for Reconsideration Was Timely Filed

Based on the foregoing, EPA had a mandatory duty to submit the proposed Car Rule to EPA for external peer review.  EPA did not provide any notice to the public that it would fail to comply with this mandatory duty.  Had EPA informed the public before or during the comment period that it would not submit the Car Rule to SAB, the public (including the Petitioners) would have had the opportunity to object to the violation at the time.  Because no such notice was given by EPA, it was impracticable for the Petitioners to object during the comment period to a violation of which they were not aware and had no reason to be aware.  Looking at the facts as of the time of the public comment period, there was no reason for Petitioners to suspect that EPA would ignore a nondiscretionary statutory mandate.  To rule otherwise would require commenters to raise during every comment period all possible violations that EPA could conceivably commit in connection with every rulemaking.  That is not what notice-and-comment is about.  "Comments" provide the Agency with input about issues with regard to which the public has received "notice."  Without notice that a statutory mandate is being or will be violated, there is nothing upon which the public can comment, other than to shoot in the dark hoping that one of the shots will hit an

- 31 -

unseen and unknown potential violation. Surely that is not what Congress contemplated under the CAA, or under any other statute that provides for public comment on proposed regulations. *Kirby*, 74 U.S. at 486 ("All laws should receive a sensible construction."); *Chevron*, 467 U.S. at 843 n.9 ("[Courts] must reject administrative constructions which are contrary to clear congressional intent.").

It was only when Petitioner Pacific Legal Foundation received EPA's response to its FOIA request, on November 10, 2010, that the Petitioners first became aware that EPA had utterly failed to comply with the SAB submittal requirement. This was well after the close of the public comment period on November 27, 2009. 74 Fed. Reg. 49,454 (Sept. 28, 2009). There could be no clearer instance of impracticability to object during the public comment period than the unavailability of information forming the basis of the objection. Accordingly, because 42 U.S.C. § 7607(d)(7)(B) authorizes Petitioners to file reconsideration petitions after the close of the public comment period where it was impracticable to raise the objections during the comment period, the Petition for Reconsideration at issue here was timely filed.

**B.  The Petition for Reconsideration Raised Issues That Were
      of Central Relevance to the Outcome of the Car Rule**

**1.  Argument 1:  EPA's Utter Failure To Comply with
      Its Nondiscretionary Duty To Submit the Car Rule
      to the Science Advisory Board Is Centrally Relevant
      to the Outcome of the Rule**

As indicated, EPA's duty to submit proposed standards and regulations to SAB during the public comment period is not a duty imposed by the Clean Air Act but is a nondiscretionary duty imposed on EPA by the SAB statute.  42 U.S.C. § 4365; *API*, 665 F.2d at 1188 ("The language of the [SAB] statute indicates that making a proposed . . . standard available to the SAB for comment is mandatory . . . .").  Here, EPA utterly failed to discharge this nondiscretionary duty, as evidenced in EPA's letter dated November 10, 2010, stating that it had no documents in its possession showing that it submitted or even contemplated submitting the Car Rule to SAB at any time.  *See* Appendix C-1.

This Court has held that an "utter failure" to comply with a nondiscretionary rulemaking mandate cannot be sanctioned.  *Sugar Cane Growers Co-Op of Florida v. Veneman*, 289 F.3d 89, 96-97 (D.C. Cir. 2002) (Referring to the notice-and-comment provisions of the APA, "the government would have us virtually repeal [the statute's] requirements:  if the government could skip those procedures . . . and then be protected from judicial review . . . [the statutory provision] obviously would be eviscerated.").  Just as an "utter failure" to comply with the independent requirements

of the Administrative Procedure Act required a reversal in *Sugar Cane Growers*, so too does EPA's "utter failure" to comply here with the independent SAB statute. *Id. Accord, New Jersey v. EPA*, 626 F.2d 1038, 1040, 1049-50 (D.C. Cir. 1980) (EPA's disregard of rulemaking requirements will not be sanctioned). *See Bennett v. Spear*, 520 U.S. at 172 (regulatory action must comply with statutory requirements).

Here, EPA's "utter failure" to submit the proposed Car Rule to SAB cannot be permitted, especially given the fact that the purpose of the SAB external peer review requirement is to ensure that EPA's regulatory proposals are based upon sound scientific and technical principles. Without SAB peer review, there is no assurance that sound science supports a proposed rule, making SAB review centrally relevant to the rule's outcome. Accordingly, EPA should have granted the Petition for Reconsideration, thereby setting the stage to discharge its nondiscretionary duty under 42 U.S.C. § 4365(c)(1).

## 2. Argument 2: In the Alternative, There Is a Substantial Likelihood That the Car Rule Would Have Been Significantly Changed If EPA Had Submitted It to the Science Advisory Board for External Peer Review, Making EPA's Failure Centrally Relevant to the Outcome of the Rule

Another standard that could conceivably apply to determining whether the Petition for Reconsideration raised issues that were "centrally relevant to the outcome" of the Car Rule is the "substantial likelihood" test set forth in 42 U.S.C. § 7607(d)(8). Assuming *arguendo* the applicability of that standard, the issues raised

- 34 -

in the Petition for Reconsideration should be deemed "centrally relevant" to the outcome of the rule if "there is a substantial likelihood that the rule would have been significantly changed if such errors had not been made." *Id.* Under the *Kennecott* formulation, where "uncertainty" caused by a procedural violation indicates a "substantial likelihood" that the rule would have been "significantly changed," the procedural violation requires reversal. *Kennecott Corp. v. EPA*, 684 F.2d at 1017.

Because the SAB was created as an independent scientific review board to advise EPA on scientific and technical issues arising in connection with rulemaking, 40 C.F.R. § 1.25(c), EPA must submit to the SAB for review rules proposed under the CAA and every other act administered by the Agency, 42 U.S.C. § 4365(c)(1). The purpose of the submittal requirement is to provide the SAB an opportunity to make available "its advice and comments [to EPA] on the adequacy of the scientific and technical basis of the [regulatory proposals]." 42 U.S.C. § 4365(c)(2).

Given this statutory mandate, Congress could not have contemplated that SAB review would be no more than a mere formality or a superfluous gesture. *Moskal v. United States*, 498 U.S. at 109 (courts should give effect to every clause and word of a statute). Congress contemplated that EPA's proposed CAA regulations would significantly evolve, mature, and otherwise change as a result of scientific and technical advice provided by SAB to EPA. McClellan Decl. ¶¶ 7, 10-11, Appendix F-12 to F-14. *See* Dwyer, *supra*, at 6-7 (SAB was created to function as a scientific

- 35 -

and technical peer review panel for EPA). Thus, congressional contemplation of a "substantial likelihood" that EPA's regulatory proposals would undergo "significant change" as a result of SAB review is built into the fabric of the SAB statute, 42 U.S.C. § 4265, and that is why SAB submittal is "mandatory" under *API*, 665 F.2d at 1188.

That is also why SAB review is "centrally relevant to the outcome" of an EPA rule. When SAB external peer review is circumvented, the SAB is unable to perform its critical function of determining whether the scientific and technical underpinnings of a rule support the regulatory choices made by EPA. If EPA ignores its duty to submit regulatory proposals to the SAB for review, it denies to itself and to the public the insights that could have been afforded by top-level scientific and technical peer review. It is hard to conceive of any issue that could be more "centrally relevant to the outcome" of an EPA regulation than whether the regulatory choices made by EPA are based on sound scientific and technical principles. Accordingly, under the *Kennecott* standard, uncertainty created by EPA's failure to submit the Car Rule to SAB for review indicates a "substantial likelihood" that the rule would have been "significantly changed" had the procedural error not been made. *Kennecott*, 684 F.2d at 1017. This point is confirmed by the declaration of Roger McClellan:

> Based upon my more than two decades of experience as a member of the SAB, after it was established legislatively, four years of experience as chair of SAB's Clean Air Act Advisory Committee, my participation as

- 36 -

> a chair or member of numerous SAB committees, and my knowledge of how the SAB interacts with EPA, I believe that EPA leadership made a serious error in failing to submit the Car Rule and the science upon which it is based to the SAB for peer review before promulgation. In my opinion, this error was so serious and related to matters of such central relevance to the Car Rule that there is a substantial likelihood that the rule would have been significantly changed in response to advice from the SAB had it been made available to the SAB by EPA for review prior to its promulgation, and this fact makes SAB submittal centrally relevant to the outcome of the Car Rule. Accordingly, it is clear to me that the Petition for Reconsideration should have been granted because of its central relevance to the outcome of the rule.

McClellan Decl. ¶ 12, Appendix F-15. Because EPA's failure to submit the proposed Car Rule to the SAB for external peer review was "centrally relevant" to the outcome of the rule, EPA should have granted the Petition for Reconsideration.

## III

## THE CAR RULE SHOULD BE REMANDED AND VACATED

Invalid rules are ordinarily remanded and vacated. *Federal Power Commission v. Transcontinental Gas Pipe Line Corp.*, 423 U.S. 326, 331 (1976). An agency's "utter failure" to comply with a rulemaking requirement usually requires vacating the rule. *Sugar Cane Growers Co-op of Florida v. Veneman*, 289 F.3d at 97 ("Normally, when an agency so clearly violates the APA we would vacate its action."). Here, there was an utter failure by EPA to comply with the rulemaking requirements of the SAB statute, a situation that calls for both remand and vacatur. *See Sprint Corp. v. Fed. Commc'n Comm'n*, 315 F.3d 369 (D.C. Cir. 2003) (noting that the D.C. Circuit

has opted for vacatur as a complement to remand with some regularity when notice-and-comment is absent).

This Court has stated that vacatur is not necessarily required for rulemaking deficiencies but that "the decision whether to vacate depends on [(1)] the 'seriousness of the order's deficiencies'" as well as (2) "the disruptive consequences of an interim change that may itself be changed." *Sugar Cane Growers*, 289 F.3d at 98. Moreover, when industry petitioners would be harmed if an EPA rule were remanded but not vacated, this Court has chosen to vacate the rule. *Cement Kiln Recycling Coalition v. EPA*, 255 F.3d 855, 872 (D.C. Cir. 2001).

Here, Petitioners have shown that they will be harmed if the Car Rule is not vacated. *See, e.g.*, Norman Brown Decl. ¶ 10, Appendix F-7 ("If the Car Rule were to be vacated, Delta would no longer be injured by the cost increases attributable to the Car Rule, and would no longer suffer the economic losses caused by the Car Rule."); Lee Brown Decl. ¶ 11, Appendix F-4 ("If the Car Rule were to be vacated, the members of CCTA would no longer be injured by the cost increases attributable to the Car Rule and would no longer suffer the economic losses caused by the Car Rule.").

In addition, EPA's utter failure to comply with the SAB submittal requirement evidences the seriousness of the deficiency in this case. Moreover, a SAB veteran of over thirty years has opined that the Car Rule likely would be significantly changed

if SAB were given the opportunity to review it.  McClellan Decl. ¶ 12, Appendix

F-15.  At the same time, the potential disruptive consequences of vacatur here are

minimal, because the first phase of the rule began to apply only in model year 2012,

while subsequent phases do not apply until 2014 or, in some cases, 2015.  *See* 76 Fed.

Reg. at 57,134.

Accordingly, the Car Rule should not only be remanded to EPA, but it should

also be vacated.

## CONCLUSION

For the foregoing reasons, the Court should remand and vacate the Car Rule.

DATED: March 27, 2014.

Respectfully submitted,

M. REED HOPPER
THEODORE HADZI-ANTICH


By s/THEODORE HADZI-ANTICH
    THEODORE HADZI-ANTICH

Counsel for Petitioners

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**
CERTIFICATE OF COMPLIANCE WITH
TYPE-VOLUME LIMITATION, TYPEFACE
REQUIREMENTS, AND TYPE STYLE REQUIREMENTS.

1.   This PETITIONERS' OPENING BRIEF complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

  X   It contains 9,411 words excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(b)(iii), or

___   It uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This PETITIONERS' OPENING BRIEF complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

  X   It has been prepared in a proportionally spaced typeface using WordPerfect X5 in font style Times New Roman and font size 14, or

___   It has been prepared in a monospaced typeface using WordPerfect X5 with ____ characters per inch and type style _____.

DATED:  March 27, 2014.


s/THEODORE HADZI-ANTICH
THEODORE HADZI-ANTICH
Attorney for Petitioners


- 40 -

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


s/THEODORE HADZI-ANTICH
THEODORE HADZI-ANTICH