ORAL ARGUMENT NOT YET SCHEDULED

No. 13-1076

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

CALIFORNIA CONSTRUCTION TRUCKING
ASSOCIATION, INC.; DELTA CONSTRUCTION
COMPANY, INC.; SOUTHERN CALIFORNIA
CONTRACTORS ASSOCIATION; NORMAN R.
"SKIP" BROWN, WILLIAM E. DAVIS;
PACIFIC LEGAL FOUNDATION,

Petitioners,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

Respondent.

On Petition for Review of 78 Fed. Reg. 5347 (Jan. 25, 2013)

**CORRECTED PETITIONERS' REPLY BRIEF**

M. REED HOPPER,
D.C. Circuit Bar No. 44739
THEODORE HAZDI-ANTICH,
D.C. Circuit Bar No. 53056
  Pacific Legal Foundation
  930 G Street
  Sacramento, California 95814
  Telephone:  (916) 419-7111
  Facsimile:  (916) 419-7747

Counsel for Petitioners

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, and Circuit Rule 26.1, the respective Petitioners provide the following disclosures:

Delta Construction Company, Inc., is a California corporation that provides road construction services.  Delta Construction Company, Inc., has no parent company, and no publicaly held company has a 10% or greater ownership interest in it.

Southern California Contractors Association, Inc., is a nonprofit trade organization that represents and promotes the interest of union contractors and their suppliers.  The Southern California Contractors Association, Inc., has no parent company, and no publicly held company has a 10% or greater ownership interest in it.

The California Construction Trucking Association, Inc. (formerly California Dump Truck Owners Association), is a trade association representing the interests of small and large trucking companies in California.  The California Construction Trucking Association, Inc., has no parent company and no publicly held company has a 10% or greater ownership interest in it.

Norman R. Brown is an individual who resides in California.

William E. Davis is an individual who resides in California.

Pacific Legal Foundation is the oldest and largest public interest law firm of its kind in America. Founded in 1973, PLF provides a voice in the courts for mainstream Americans who believe in limited government, private property, individual freedom, and free enterprise. One of PLF's objectives is to ensure that government agencies comply with the constitutional and statutory mandates under which they operate. Headquartered in Sacramento, California, PLF has branch offices in Washington, Florida, and the District of Columbia.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

  I.  PETITIONERS HAVE STANDING . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.  The Petitioners Have Suffered
           Injury-in-Fact Caused by the Car Rule. . . . . . . . . . . . . . . . . . . . . . . 3

      B.  The Petitioners' Injuries Are
           Redressable by This Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      C.  The Petitioners' Challenge Is
           Ripe and Is Not Moot . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

 II.  EPA'S DENIAL OF THE RECONSIDERATION
     PETITION WAS IMPROPER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      A.  The Science Advisory Board Peer Review
           Mandate Is Not Subject to the Judicial Review
           Constraints on EPA's Violations of Clean Air
           Act's Procedural Requirements. . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      B.  It Was Impracticable To Comment on
           The Science Advisory Board Issue During
           The Public Comment Period . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      C.  The Science Advisory Board Statute
           Applies to The Car Rule. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Page**

D.  EPA Did Not "Make Available" The Car
Rule to the Science Advisory Board.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

E.  EPA's Failure To Submit the Proposed Car
Rule to The Science Advisory Board for Peer
Review Meets the Level of Seriousness Required
by the Clean Air Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

III.  THE CAR RULE SHOULD BE
REMANDED AND VACATED.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## TABLE OF AUTHORITIES

**Page**

### Cases

*Allen v. Wright*, 468 U.S. 737, 757 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

\**American Petroleum Institute v. Costle*,
  665 F.2d 1176 (D.C. Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13, 17, 20

*America's Community Bankers v. F.D.I.C.*,
  200 F.3d 822, (D.C. Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Appalachian Power Co. v. E.P.A.*, 135 F.3d 791 (D.C. Cir. 1998). . . . . . . . . . . . 20

*Arlington v. FCC*, 133 S. Ct. 1863 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

\**Bennett v. Spear*, 520 U.S. 154 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

\**Chevron U.S.A., Inc. v. Natural Resources Defense
  Council, Inc.*, 467 U.S. 834 (1984). . . . . . . . . . . . . . . . . . . . . . . 12-13, 15-16, 18

*City of Waukesha v. E.P.A.*, 320 F.3d 228 (D.C. Cir. 2003).. . . . . . . . . . . . . . . . . 5

*Coalition for Responsible Regulation, Inc. v. E.P.A.*,
  684 F.3d 102 (D.C. Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 21

*Cooper Industries, Inc. v. Aviall Services, Inc.*,
  543 U.S. 157 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

*Ctr. For Energy & Econ. Dev. v. EPA*,
  398 F.3d 653 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9

*Detweiler v. Pena*, 38 F. 3d 591, 594 9 (D.C. Cir. 1994). . . . . . . . . . . . . . . . . . . 10

*Doe v. Chao*, 540 U.S. 614 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Authorities upon which we chiefly rely are marked with asterisks.

**Page**

*Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998). . . . . . . . . . . . . . . . . . . . . . 6, 9

*Fields v. Office of Johnson*, 520 F. Supp. 2d 101 (D.D.C. 2007). . . . . . . . . . . . . . 4

*Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658 (D.C. Cir. 1996).. . . . . . . . . . . . . . 8

*Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hunt v. Washington State Apple Adver. Comm'n*,
    432 U.S. 333 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Kennecott Corp. v. E.P.A.*, 684 F.2d 1007 (D.C. Cir. 1982). . . . . . . . . . . 3, 18-19

*Lopez v. Davis*, 531 U.S. 230 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . . . 3

*Morton v. Manari*, 417 U.S. 535, 551 (1974). . . . . . . . . . . . . . . . . . . . . . . . . 10-11

*Moskal v. United States*, 498 U.S. 103 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Novosteel SA v. U.S., Bethlehem Steel Corp.*,
    284 F.3d 1261 (Fed. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518 (1986). . . . . . . . . . . 10

*Sierra Club v. E.P.A.*, 292 F.3d 895 (D.C. Cir. 2002). . . . . . . . . . . . . . . . . . . . 7

*U.S. v. Kirby*, 74 U.S. 482 (1868). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Utility Air Regulatory Group v. E.P.A.*, 134 S. Ct. 2427 (2014). . . . . . . . . . . . . 15

**Page**

*Wabash Valley Power Ass'n, Inc. v. F.E.R.C.*,
    268 F.3d 1105 (D.C. Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Warth v. Seldin*, 422 U.S. 490 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*White Stallion Energy Center, LLC v. E.P.A.*,
    748 F.3d 1222 (D.C. Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

**Page**

## Statutes

42 U.S.C. § 4365(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

§ 7607(d)(7)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

49 U.S.C. 32902(j)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## Miscellaneous

Executive Order 12866. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

§ 4(c)(3)-(7). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

H.R. Conf. Rep. 86-722 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# SUMMARY OF ARGUMENT[1]

EPA does not dispute five central facts: (1) This Court requires EPA to "submit" to the Science Advisory Board (the "Board" or "SAB"), proposed rules before they are promulgated; (2) EPA did not "submit" the proposed Car Rule to the Board; (3) the Car Rule increases initial costs of purchasing light duty vehicles subject to the rule; (4) the increased costs will be borne by both businesses and individuals; (5) Petitioners are comprised of businesses and individuals who purchase new cars. Accordingly, it is unsurprising that EPA deploys a series of issue-dodging tactics in hopes of avoiding judicial assessment of Petitioners' objections.

Petitioners are injured-in-fact because they pay higher costs for new cars as a result of the Car Rule, and this Court may grant relief to address those injuries. EPA's assertions that Petitioners lack standing are unfounded. (Section I below.)

EPA argues incorrectly that a statutory provision intended to deal solely with judicial review of violations of the Clean Air Act ("CAA") applies where there is no allegation of any CAA violation. But judicial review limitations of the CAA do not apply to the stand-alone SAB statutory violation. (Section II A., below.)

---

[1] In their initial reply brief, the Petitioners inadvertently exceeded the word limit set by this Court in its order dated February 4, 2014. This final brief complies with that word limit.

EPA further argues that, during the comment period on the proposed Car Rule, the then-future SAB violation should have been raised, rather than in a petition for reconsideration after the violation occurred.  But during the comment period the Petitioners had no basis for suspecting that EPA would not comply with the nondiscretionary mandate to submit the Car Rule to the SAB for peer review. (Section II B., below.)

Next, EPA argues that the requirement to make the proposed rule available to the Board does not apply to the Car Rule because there was no "formal review" of the Car Rule conducted by other federal agencies.  That position is belied by EPA's acknowledgment in the preambles of the proposed and final rules that the Office of Management and Budget ("OMB") spearheaded an extensive, government-wide review of the costs and benefits of the rule, as required by executive order. Furthermore, statutorily mandated reviews were conducted by the Departments of Transportation and Energy.  (Section II C., below.)

EPA seeks to create a legal fiction that the proposed Car Rule was "made available" to the SAB because it was published in the Federal Register and on the internet.  But that position is directly at odds with *American Petroleum Institute v. Costle*, 665 F.2d 1176, 1180, 1189 (D.C. Cir. 1981) ("*API*").  (Section II D., below.)

Next, EPA contends that the Petitioners have not shown that EPA's error was so serious and related to matters of such central relevance to the Car Rule that there

is a substantial likelihood that the rule would have been significantly changed if such error had not been made. Assuming arguendo that the "substantial likelihood" standard applies here, EPA's position is at odds with *Kennecott Corp. v. E.P.A.*, 684 F.2d 1007 (D.C. Cir. 1982). EPA compounds its error by asking this Court to ignore a declaration made by a 30-year veteran of the SAB on this issue. (Section II E., below.)

Finally, EPA argues that if the Car Rule is remanded it should not also be vacated. This Court has held that it is appropriate to vacate rules that are illegally promulgated. (Section III below.)

## ARGUMENT

## I

## PETITIONERS HAVE STANDING

Petitioners meet the standing requirements of Article III: (1) They are injured-in-fact; (2) the injury was caused by the challenged action; and (3) the injury can be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

### A.  The Petitioners Have Suffered Injury-in-Fact Caused by the Car Rule

The Petitioners filed declarations showing that they are injured in fact by the Car Rule because the rule increases the costs of cars they purchase. Davis Decl.

- 3 -

¶¶ 2-7 (JA-1454-55); Norman Brown Decl. ¶¶ 3-11 (JA-1443-44); Lee Brown Decl. ¶¶ 2-11 (JA-1438-41).

Respondent argues that the Petitioners have not suffered injury-in-fact because new car purchasers will save money over time because fuel efficiency savings will offset the increased cost of new vehicles. This argument fails, for two reasons. First, there is no independently verified support for Respondent's assertions regarding cost savings over time. Rather, EPA's brief cites its own self-serving statements in the preamble. *See* Resp't Br. at 17-18. *Fields v. Office of Johnson*, 520 F. Supp. 2d 101, 105 (D.D.C. 2007) (self-serving statement unreliable).

Second, Respondent's preamble acknowledges that the rule will increase costs of new light-duty vehicles. (JA-0393.) Accordingly, Petitioners are injured-in-fact by the Car Rule because they purchase new cars in the ordinary course of business or life, and are required to spend more now on new car purchases than they would have spent but for the Car Rule. *Ctr. For Energy & Econ. Dev. v. EPA*, 398 F.3d 653, 656-58 (D.C. Cir. 2005) (current or imminent injury is "normally enough for standing").

Respondent goes on to state that most new car purchasers use credit to finance the vehicles over time. But that is irrelevant on the issue of whether the actual cost of the new vehicles, at the time of purchase, has increased as a result of the rule.

Respondent also asserts waiver because Petitioners did not specifically object to EPA's unsupported preamble statement that purchasers of new cars would recoup

their extra costs over time.  But it is irrelevant that Petitioners' declarations did not echo the language of the preamble.  Petitioners do not rely on the veracity or lack of veracity of EPA's statements that purchasers of new cars will recoup their money over time.  In this litigation, it is the Respondent who raised the issue of possible cost savings over time, in order to attack Petitioners' standing.  "[R]eply briefs reply to arguments made in the response brief." *Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002).

Citing *City of Waukesha v. E.P.A.*, 320 F.3d 228, 237 (D.C. Cir. 2003), Respondents state that the Petitioners have failed to provide "any specific or concrete allegations that they will be injured based on the *likelihood* of purchasing vehicles that will have increased costs."  (Emphasis added.)  Respondent misreads *City of Waukesha*, where the Court observed that the petitioner "states only that the proposed regulations 'may impact' its members."  320 F.3d at 237.  By contrast, here the Petitioners allege that the Car Rule increases their costs, not that it "may" increase costs.

Respondent also asserts that Petitioners have not alleged specifically that they will purchase new cars subject to the Car Rule before the end of the 2016 model year.  But the cost increases will not magically disappear after model year 2016, because the emissions standards driving the cost increases will not be rescinded.  Furthermore, the Car Rule constitutes the first phase of greenhouse gas emissions limitations for

automobiles, and subsequent phases, starting with model year 2017, provide even greater restrictions that will further increase the costs of new cars, using the Car Rule as a springboard.  (JA-0794).

The Supreme Court has upheld standing on far less concrete injury allegations. *See Fed. Election Comm'n v. Akins*, 524 U.S. 11, 23 (1998) (petitioners injured-in-fact because they were denied access to certain information associated with elections and were not in a position to challenge the results);  *Doe v. Chao*, 540 U.S. 614, 624-25 (2004) (standing based on *psychological* injury resulting from the government's violation of the Privacy Act); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 175-76 (2000) (pollution caused reluctance to boat, swim, and fish on a river).

Respondent next argues that, because the Car Rule applies to fleets rather than individual vehicles, the Petitioners "might"  be able to purchase new cars at costs unaffected by the Rule.  Standing is not undercut if the cost of a particular car *might* not be affected by the rule.  *Wabash Valley Power Ass'n, Inc. v. F.E.R.C.*, 268 F.3d 1105, 1113 (D.C. Cir. 2001) (It is irrelevant to standing that increased competition might not occur because "[p]arties suffer cognizable injury under Article III when an agency . . . allow[s] increased competition.").

In so far as associational standing is concerned, Petitioner CCTA meets the injury-in-fact requirement because its members are businesses who will be adversely

- 6 -

affected by the Car Rule in that their costs of purchasing new light-duty vehicles are increased as a result of the Car Rule. Lee Brown Decl. ¶¶ 2-7. (JA-1439-40.) Accordingly, CCTA meets the three requirements for associational standing: (1) at least one of its members would have standing to sue in his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit. *See Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 342-43 (1977); *See also, Sierra Club v. E.P.A.*, 292 F.3d 895, 898 (D.C. Cir. 2002).

## B. The Petitioners' Injuries Are Redressable by This Court

The Respondent claims that, because California has its own standards for air emissions from new cars, granting the Petitioners their requested relief would not redress their injuries. But Respondent acknowledges that California has agreed to adopt the federal Car Rule so that compliance with the federal rule is deemed in compliance with the California standards. Resp't Br. at 22. If the federal Car Rule is remanded and vacated, California's commitment to apply the federal rule in California would no longer apply, and the Petitioners would no longer be subject to cost increases attributable to the Car Rule. *Allen v. Wright*, 468 U.S. 737, 757 (1984) (causation can be supported where the injury occurs without "action of an independent third party not before the Court"). Accordingly, the requested relief will

- 7 -

redress the Petitioners' injuries because, "if the court affords the relief requested, the [injury] will be removed." *Warth v. Seldin*, 422 U.S. 490, 504 (1975); *see Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 666 (D.C. Cir. 1996).

EPA argues further that the relief requested will not obviate the injury because the rule is a joint rulemaking of EPA and the National Highway Traffic Safety Administration, and deleting EPA's part of the joint rule will not impact the other part. But in acting jointly, the two agencies developed a single, overarching rule governing greenhouse gas emissions and fuel efficiency standards. As the Respondent acknowledges in its brief, quoting the preamble, "[t]he two agencies standards comprise the National Program, and this discussion of costs and benefits of EPA's [greenhouse gas] standard does not change the fact that both [standards], jointly, are the source of the benefits and costs of the National Program." Resp't Br. at 23 (quoting 75 Fed. Reg. at 25,509). (JA-0574.) If the joint rule creates an indivisible "National Program," then the fuel economy standards cannot be bifurcated from the greenhouse gas emission standards.

Respondent asserts next that, because the Petitioners challenge the denial of their reconsideration petition and not the Car Rule itself, this Court can only grant remand but not vacatur and, consequently, Petitioners lack standing because the Court cannot grant the requested relief. That is untrue. Petitioners have alleged that EPA's petition denial was unlawful. Remand (with or without vacatur) would provide the

- 8 -

Petitioners with the relief they had requested from the Respondent, namely, a reconsideration of the Car Rule after peer review by the SAB. "Where an agency rule causes the injury, the redressability requirement may be satisfied . . . by vacating the challenged rule and giving the aggrieved party the opportunity to participate in a new rulemaking the results of which might be more favorable to it." *America's Community Bankers v. F.D.I.C.*, 200 F.3d 822, 828-29 (D.C. Cir. 2000). *Accord, Ctr. for Energy & Econ. Dev. v. E.P.A.*, 398 F.3d at 657.

## C.  The Petitioners' Challenge Is Ripe and Is Not Moot

As Respondent acknowledges, the Car Rule applies to Model Years 2012 through 2016. Resp't Br. at 24. We are in the middle of that period, when the price increases directly affect the new vehicle costs borne by the Petitioners.

Whether or not Respondent will be in a position to expeditiously reconsider the Car Rule before the end of the compliance period is irrelevant, because, even if the reconsideration process goes beyond 2016, the case will not be mooted. *Fed. Election Comm'n v. Akins*, 524 U.S. 11 (Federal Communications Commission dismissal of a complaint seeking election information illegally withheld is not moot simply because the election has already taken place.).

## II

## EPA'S DENIAL OF THE RECONSIDERATION
## PETITION WAS IMPROPER

**A.  The Science Advisory Board Peer Review Mandate Is
Not Subject to the Judicial Review Constraints on EPA's
Violations of Clean Air Act's Procedural Requirements**

EPA and proposed intervenor-respondents argue that the Supreme Court's

decision in *Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518 (1986), is

irrelevant to whether the SAB peer review mandate is subject to the judicial review

constraints of the CAA.  They are wrong.

*Parsons Steel* addressed whether the Full Faith and Credit Act was limited by

an exception to the Anti-Injunction Act, allowing federal courts to grant injunctions

against certain state proceedings.  The Supreme Court held that the limitation applied

in certain instances but not in others, opining that "whenever possible, statutes should

be read consistently."  474 U.S. at 524.  Petitioners ask this Court to read the CAA

and the SAB statute consistently.

The CAA constrains judicial review of EPA's procedural violations *of the*

*CAA,* while the separate SAB statute contains no constraints on judicial review.

"When two statutes are capable of co-existence, it is the duty of the court, absent a

clearly expressed congressional intention to the contrary, to regard each as effective."

*Detweiler v. Pena*, 38 F. 3d 591, 594 9 (D.C. Cir. 1994) (citing *Morton v. Manari*,

- 10 -

417 U.S. 535, 551 (1974).  Here, there is no "clearly expressed congressional intention" to graft onto the SAB statute the judicial review limitations of the CAA. Reading the CAA's judicial review limitations into the SAB statute would constitute rewriting the latter, something that only Congress may do.  Petitioners' gravamen is that EPA violated the SAB statute. They have not alleged *any* violation of the CAA. Accordingly, the CAA's limitations on judicial review may not be applied in, and are irrelevant to, the violation of the SAB statute.

## B.  It Was Impracticable To Comment on The Science Advisory Board Issue During The Public Comment Period

Respondent argues that Petitioners should have commented on the SAB issue during the public comment period on the proposed Car Rule and, because they did not, they are not entitled to relief through a petition for reconsideration.  The provision of the Clean Air Act cited by Respondent in support of its argument, however, goes on to state that reconsideration petitions are authorized after the close of the comment period where it was impracticable to raise the objections during the comment period.  42 U.S.C. § 7607(d)(7)(B).  Here, there was no reason for Petitioners to have believed that EPA would fail to comply with its nondiscretionary duty to submit the proposed Car Rule for peer review to the Board.  Looking at the facts as of the time of the public comment period, Petitioners reasonably assumed that EPA would comply with its rulemaking duties, and there was nothing in the proposed

Car Rule to indicate otherwise. Commenters should not be required to point out to EPA every conceivable rulemaking requirement that EPA could possibly violate, and then to instruct EPA not to violate any of them. Surely Congress did not intend for commenters to "shoot in the dark" hoping that one of the shots will hit an unseen and unknowable potential rulemaking violation. *U.S. v. Kirby*, 74 U.S. 482, 486 (1868) ("All laws should receive a sensible construction."); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 834, 843 n.9 (1984) ("[Courts] must reject administrative constructions which are contrary to clear congressional intent.").

## C.  The Science Advisory Board Statute Applies to the Car Rule

Contrary to Respondent's assertions, the SAB statute applies to the Car Rule, for two reasons. First, the underlying statutory duty to seek SAB peer review is unambiguous. Second, to the extent there is any ambiguity in connection with the limitation on that duty embedded in the term "formal review and comment," EPA's interpretation is impermissible.

*Chevron* sets forth a two-step process to resolve a central issue here. The first step provides:

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.

467 U.S. at 842-43.

This Court has held that the SAB statute is unambiguous regarding the submittal requirement. *API*, 665 F.2d at 1188. And the Supreme Court has held that the use of the word "shall" in a statute signifies a nondiscretionary duty. *Lopez v. Davis*, 531 U.S. 230, 241 (2001). Here, the SAB statute states that EPA "shall" make regulatory proposals available to the Board for peer review. 42 U.S.C. § 4365(c)(1). *See Moskal v. United States*, 498 U.S. 103, 109 (1990) (courts must give effect to every clause and word of a statute). Accordingly, EPA has no discretion to ignore the SAB mandate.

EPA conflates discretion regarding the substance of the regulatory decision with the nondiscretionary mandate to seek SAB peer review. *Bennett v. Spear*, 520 U.S. 154, 172 (1997) ("It is rudimentary administrative law that discretion as to the substance of the ultimate decision does not confer discretion to ignore the required procedures of decisionmaking."). Because the mandatory nature of EPA's submittal duty is clear, the second prong of the *Chevron* test does not apply to the issue of whether EPA must comply with the SAB statute when promulgating regulations. It clearly must. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43. Accordingly, an EPA decision to ignore the SAB statutory mandate is impermissible.

EPA argues that the SAB requirement was not triggered here because "formal review" was not sought from other federal agencies. But EPA designated this rule as "economically significant," thereby triggering elaborate federal agency review procedures under executive order, which requires input not only from OMB, but through OMB, from "other federal agencies," including the "Vice President," via a "coordinated process" overseen by OMB. Executive Order 12866, Section 4(c)(3)-(7). (JA-1459-60.) The process includes specific deadlines for review and comment by federal agencies. A more "formal" review process is difficult to imagine.

Contrary to Respondent's suggestion, this Court has never decided the issue of whether OMB review under Executive Order 12866 constitutes "formal review" for purposes of the SAB trigger. At most, this Court declared in the context of the specific facts associated with EPA's Greenhouse Gas Endangerment Finding that "it is not clear that EPA provided the Endangerment Finding 'to any other Federal agency for formal review and comment.'" *See Coalition for Responsible Regulation, Inc. v. E.P.A.*, 684 F.3d 102, 124 (D.C. Cir. 2012). But in the instant case, it is clear that EPA submitted the Car Rule to OMB for review and comment under Executive Order 12866. Whether that submittal constituted or triggered "formal review and comment" by other federal agencies is before this Court for the first time in this proceeding. *See, e.g.*, *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157,

170 (2004) (a court's silence regarding a legal issue does not constitute precedent on that issue).

To the extent that the term "formal review" is ambiguous, *Chevron* Step Two applies to EPA's interpretation *of that term*. Step Two provides that "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's . . . [interpretation] is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. Significantly,

> "the principle of deference to administrative interpretations . . . [has been applied] whenever decision as to the meaning or reach of a statute has involved *reconciling conflicting policies*, and a full understanding of the force of the statutory policy in the given situation has depended upon *more than ordinary knowledge* respecting the matters subjected to agency regulations."

*Id.* at 844 (emphasis added).

Here, there are no "conflicting policies" regarding whether "formal review" includes review mandated by statute or by executive order. That is not the type of conflicting policy question involved in, for example, whether a cost-benefit analysis favors protection of human health or avoidance of economic harm, where conflicting policies may drive the result. And the question does not depend upon "more than ordinary knowledge respecting the matters subjected to agency regulations." EPA does not have superior scientific or technical knowledge on the issue of what constitutes "formal review." To the contrary, this is a pure legal issue of statutory

construction if there ever was one and, as such, *Chevron* Step Two deference is not accorded to EPA's interpretation.

As the Supreme Court stated in *Utility Air Regulatory Group v. E.P.A.*, 134 S. Ct. 2427 (2014), "[t]he question for a reviewing court is whether in [its statutory interpretation] the agency has acted reasonably and *thus* has 'stayed within the bounds of its statutory authority,'" (quoting *Arlington v. FCC*, 133 S. Ct. 1863, 1868 (2013) (emphasis added)).  Here, EPA would rewrite the statutory language by inserting the words "required by statute" at the tail end of the term "formal review and comment."  This EPA cannot do, no matter how much it may wish that the statute was drafted in conformance with its administrative predilections. *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125 (2000) (agency cannot expand its authority or discretion beyond statutory limits).

Furthermore, other federal agencies, including the Department of Transportation and the Department of Energy, were involved in reviewing and commenting on the proposed Car Rule, and there is no dispute that those reviews were statutorily mandated.  Yet Respondent argues that only the fuel economy standards were submitted to those agencies and not the greenhouse gas emissions standards.  That is not true.  This was a joint rulemaking of EPA and the NHTSA. The fuel economy and emission standards are part and parcel of a single rulemaking submitted for review and comment to the general public and to other federal agencies.

- 16 -

"EPA and NHTSA are issuing this Joint Final Rule to establish a National Program consisting of new standards for light-duty vehicles that will reduce greenhouse gas emissions and improve fuel economy."  *See* 75 Fed. Reg. 25,324-01 (JA-0388). Accordingly, the Respondent's efforts to separate the two standards are to no avail. *See* 75 Fed. Reg. at 25,677 (JA-0742) ("In accordance with 49 U.S.C. § 32902(j)(1), we submitted *this* . . . rule to the Department of Energy.") (emphasis added). Throughout the preamble, EPA and NHTSA refer to themselves jointly as "we."

The same applies to review under NEPA by other federal agencies.  NEPA review was sought for the entire regulatory package comprising the joint rulemaking.

## D.  EPA Did Not "Make Available" The Car Rule to the Science Advisory Board

Respondent argues that it made the Car Rule available to the SAB by "disseminating the proposed standards through online posting and subsequently publishing notice of them in the Federal Register."  But Respondent ignores this Court's *API* decision, which rejected mere publication in the Federal Register because "the statute explicitly mandates that standards be *submitted* to the Board for review." 665 F.2d at 1189 (emphasis added).  The onus is on EPA.  That onus is not shifted to the Board merely because the proposed rule was also published on the internet.

- 17 -

### E.  EPA's Failure To Submit the Proposed Car Rule to the Science Advisory Board for Peer Review Meets the Level of Seriousness Required by the Clean Air Act

Assuming arguendo that the Clean Air Act's limitations on judicial review apply to the Car Rule, for seven reasons the Petitioners have met their burden to establish that the rule would have been significantly changed had it been presented for peer review to the SAB.  First, the submittal requirement was enacted by Congress to address the public criticism of EPA that its rulemaking was not supported by competent scientific peer review.  *See* Joint Explanatory Statement, H.R. Conf. Rep. 86-722 at 3295-96 (JA-1517).  That is why "the intent of [the submittal requirement] is to ensure that the [SAB] is able to comment in a well-informed manner on any regulation that it so desire." *Id.* at 3296.  Change based on SAB review is thus built into the fabric of the SAB peer review requirement.  Given this congressional intent, EPA's position is untenable.  "[Courts] must reject administrative constructions which are contrary to clear congressional intent." *Chevron*, 467 U.S. at 843 n.9.

Second, Respondent's efforts to distinguish *Kennecott* are to no avail.  In *Kennecott*, EPA denied a petition for reconsideration, asserting that its failure to include certain documents in the rulemaking record was not significant because, even if the documents had been included, EPA would have come to the same regulatory conclusion.  This Court disagreed, stating that "EPA's failure to include such documents constitutes reversible error, for the uncertainty that might be clarified by

- 18 -

those documents . . . indicates a 'substantial likelihood' that the regulations would 'have been significantly changed.'" 684 F.3d at 1018-19. Here, EPA's failure to submit the proposed Car Rule to the SAB also is reversible error because the uncertainty regarding the outcome of the Board's review, and the attendant uncertainty regarding EPA's response thereto, indicates a substantial likelihood that the Car Rule would have been significantly changed had the Board been consulted.

Third, relying solely on *White Stallion Energy Center, LLC v. E.P.A.*, 748 F.3d 1222, 1249 (D.C. Cir. 2014), Respondent argues that the declaration of Roger O. McClellan cannot be used by Petitioners in this proceeding on the issue of substantial likelihood. But that case involved the extent to which EPA reasonably relied on data generated by contractors in promulgating a rule governing emissions of hazardous air pollutants. After the rule had been finalized, the petitioners developed their own data and sought to use it in a challenge to the integrity of EPA's conclusions. In refusing to consider the data generated by the petitioners, the Court opined that, "We cannot consider the data from petitioners' independent resampling, which was conducted after the Final Rule issued and was not part of the administrative record." *Id.*

By contrast, the issue here is not a factual issue involving the use of after-acquired data that is not part of the administrative record. It is a legal issue of whether the "substantial likelihood" test has been met. On such legal issues, *White*

*Stallion* is silent. The declaration of a 30-year veteran SAB member regarding SAB's likely input and EPA's likely reaction is certainly relevant on that issue.

Fourth, Respondent argues that *API* requires a holding in its favor. That is incorrect. In *API*, EPA had submitted two drafts of the criteria documents supporting the ozone standard to the SAB for peer review and had made changes to both drafts based upon the Board's recommendations. *See* 665 F.2d at 1188. In rejecting the challenge to the ozone standard, the Court found that because the Board had twice reviewed the criteria documents, which contained the scientific and technical bases for the standard, it was *unlikely* that SAB review of the actual standard would have mattered. *Id.* Here, by contrast, the Board did not have the opportunity to review anything.

Fifth, Respondent argues that the Car Rule does not involve scientific or technical matters on which the Board could have provided comment. That argument is belied by the fact that the preambles of the proposed and final rules set forth on hundreds of pages in minute detail the scientific and technical underpinnings upon which EPA generated the greenhouse gas standards for mobile sources. *See* 75 Fed. Reg. 25,324 (final rule) (JA-0388), 74 Fed. Reg. 49,454 (proposed rule) (JA-0001).

Sixth, Respondent's citation to *Appalachian Power Co. v. E.P.A.*, 135 F.3d 791, 815 (D.C. Cir. 1998), is inapposite. The issue there was whether EPA provided sufficient time for comment on   regulatory refinements made in response to

comments.  Here, we do not deal with refinements made in response to comments but with EPA's utter failure to submit the proposed rules to the SAB.

Seventh, Respondent's reliance on *Coalition for Responsible Regulation* is misplaced.  There, the Court held that the petitioners failed to "show" that the error was of such central relevance that it was substantially likely that the rule would have been significantly changed.  684 F.3d at 124.  By contrast, Petitioners have made the requisite showing here.

## III

## THE CAR RULE SHOULD BE REMANDED AND VACATED

Respondent argues that, because this proceeding involves a challenge to EPA's denial of a petition for reconsideration, the Car Rule could be remanded but not vacated.  For the reasons set forth in Petitioners' Opening Brief at 37-39, that is untrue.

## CONCLUSION

For these reasons, as well as those set forth in Petitioners' Opening Brief, the Court should grant the petition and the relief requested.

DATED:  October 21, 2014.

Respectfully submitted,

M. REED HOPPER
THEODORE HADZI-ANTICH


By s/THEODORE HADZI-ANTICH
    THEODORE HADZI-ANTICH

Counsel for Petitioners

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**
CERTIFICATE OF COMPLIANCE WITH
TYPE-VOLUME LIMITATION, TYPEFACE
REQUIREMENTS, AND TYPE STYLE REQUIREMENTS.

1.     This CORRECTED PETITIONERS' REPLY BRIEF complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

✔     It contains 4,917 words excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(b)(iii), or

___     It uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This CORRECTED PETITIONERS' REPLY BRIEF complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

✔     It has been prepared in a proportionally spaced typeface using WordPerfect X5 in font style Times New Roman and font size 14, or

___     It has been prepared in a monospaced typeface using WordPerfect X5 with ____ characters per inch and type style _____.

DATED:  October 21, 2014.

s/THEODORE HADZI-ANTICH
THEODORE HADZI-ANTICH
Attorney for Petitioners

- 23 -

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

<u>s/THEODORE HADZI-ANTICH</u>
THEODORE HADZI-ANTICH