ORAL ARGUMENT NOT YET SCHEDULED

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

—————————————————

No. 13-1076

—————————————————

CALIFORNIA CONSTRUCTION TRUCKING ASS'N, INC. ET AL.,

PETITIONERS,

V.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

RESPONDENT.

—————————————————

ON PETITION FOR REVIEW OF FINAL AGENCY ACTION OF THE
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

—————————————————

FINAL MERITS BRIEF FOR RESPONDENT

SAM HIRSCH
ACTING ASSISTANT ATTORNEY GENERAL
ENVIRONMENT AND NATURAL
RESOURCES DIVISION

MICHELE L. WALTER
ENVIRONMENTAL DEFENSE SECTION
U.S. DEPARTMENT OF JUSTICE
P.O. BOX 7611
WASHINGTON, D.C. 20044
TEL: (202) 514-2795
FAX: (202) 514-8865
MICHELE.WALTER@USDOJ.GOV

OF COUNSEL

Steven Silverman
Office of General Counsel
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460
Tel:    (202) 564-5523


Oct. 22, 2014

## <u>RESPONDENT'S CERTIFICATE AS TO PARTIES,<br>RULINGS, AND RELATED CASES</u>

Pursuant to Circuit Rule 28(a)(1), counsel for Respondent United States Environmental Protection Agency submits this certificate as to parties, rulings, and related cases.

**A.    Parties and *Amici***

**i.    Parties, Intervenors, and *Amici* Who Appeared in the District Court**

This case is a petition for review of final agency action, not an appeal from the ruling of a district court.

**ii.    Parties to These Cases**

All parties appearing in this Court are listed in Petitioners' Opening Brief.

**B.    Rulings Under Review**

The action under review is EPA's denial of a petition for reconsideration of a final rule.  *See Denial of Reconsideration Petition on Model Year 2012-2016 Light-Duty Vehicle Greenhouse Gas Emissions Standards*, 78 Fed. Reg. 5347 (Jan. 25, 2013).

**C.    Related Cases**

Case Nos. 11-1428, 11-1441, and 12-1427 are consolidated petitions for review challenging the action *Greenhouse Gas Emissions Standards and Fuel Efficiency Standards for Medium- and Heavy-Duty Engines and Vehicles; Final*

*Rule*, 76 Fed. Reg. 57,106 (Sept. 15, 2011) ("Truck Rule"). On February 4, 2013, the Court ordered that the challenges to the Truck Rule be coordinated with the instant case, such that briefing of the two challenges shall occur on the same schedule, and oral argument in the cases shall be scheduled on the same day before the same panel. Doc. 1478250. Undersigned counsel notes that although the Truck Rule involves some of the same petitioners as the instant petition and some of the same procedural issues with respect to those particular petitioners, the Truck Rule and the EPA's denial of reconsideration at issue here are two distinct agency actions. Moreover, the Truck Rule involves an additional petitioner and issues not involved in the instant case. Thus, the cases are not "related" within the meaning of Circuit Rule 28(a)(1)(C).

Respectfully submitted,

SAM HIRSCH
Acting Assistant Attorney General

 /s/ *Michele L. Walter*
MICHELE L. WALTER, Attorney
United States Department of Justice
Environment & Natural Resources
    Division
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 514-2795
Fax: (202) 514-8865
Michele.Walter@usdoj.gov

ii

OF COUNSEL

Steven Silverman
Office of General Counsel
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460
Tel:    (202) 564-5523


Oct. 22, 2014

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................vi

GLOSSARY ...............................................................................x

JURISDICTIONAL STATEMENT ...................................................1

STATUTES AND REGULATIONS ...................................................2

ISSUES PRESENTED...................................................................2

STATEMENT OF THE CASE..........................................................3

I.      INTRODUCTION ..............................................................3

II.     FACTUAL AND LEGAL BACKGROUND...................................6

        A.      The Clean Air Act ..................................................6

        B.      The Science Advisory Board Statute .............................7

        C.      Factual Background.................................................8

SUMMARY OF ARGUMENT ........................................................9

STANDARD OF REVIEW ............................................................12

ARGUMENT ...........................................................................13

I.      PETITIONERS LACK STANDING TO CHALLENGE EPA's
        RECONSIDERATION DENIAL AND THEIR CHALLENGE
        IS MOOT ......................................................................13

        A.      Petitioners Have Failed To Demonstrate Standing. ...........14

                1.      Petitioners lack a concrete, particularized, and
                        imminent injury....................................................16

                2.      Petitioners' asserted injury is neither caused by EPA's
                        Reconsideration Denial nor capable of being redressed
                        by the Court........................................................21

B.    Petitioners' Challenge Is Moot.............................................................24

II.    EPA PROPERLY DENIED THE RECONSIDERATION PETITION........26

A.    The CAA Applies To Reviewing Compliance With The
Board Statute. ...................................................................................26

B.    EPA Reasonably Denied The Reconsideration Petition
Where Petitioners Failed To Demonstrate That Submitting
A Comment Concerning Board Review Was Impracticable
During The Comment Period. ............................................................30

C.    The Board Statute Does Not Apply. ..................................................32

D.    Even If The Board Statute Applies, EPA
Complied By Making The Proposed Car Rule Available
Through Electronic Posting And The Federal Register. .....................36

E.    Even If EPA Committed A Procedural Error, It Does Not
Rise To The Level Of Seriousness Required By 42 U.S.C.
§§ 7607(d)(8), (9) ..............................................................................38

III.    VACATUR AND REMAND OF EPA's CAR RULE IS NOT
AN APPROPRIATE REMEDY ...................................................................44

CONCLUSION ........................................................................................................44

# TABLE OF AUTHORITIES

## CASES

*Am. Petroleum Inst. v. Costle,
   665 F.2d 1176 (D.C. Cir. 1981) ................................................. 12, 27, 29, 38, 39

Appalachian Power Co. v. EPA,
   135 F.3d 791 (D.C. Cir. 1998) ..........................................................................43

*Chamber of Commerce v. EPA,
   642 F.3d 192 (D.C. Cir. 2011) ................................................ 5, 13, 21, 22, 24, 25

*Chevron, U.S.A., Inc. v. NRDC, Inc.,
   467 U.S. 837 (1984) ................................................................................. 13, 32

City of Waukesha v. EPA,
   320 F.3d 228 (D.C. Cir. 2003) ..........................................................................20

Clapper v. Amnesty Int'l USA,
   133 S. Ct. 1138 (2013) .....................................................................................16

*Coal. for Responsible Regulation v. EPA,
   684 F.3d 102 (D.C. Cir. 2012), cert. granted in part, limited
   to other grounds, 134 S. Ct. 418 (2013) ...................... 1, 7, 27, 34, 35, 38, 41, 43

Detweiler v. Pena,
   38 F.3d 591 (D.C. Cir. 1994) ............................................................................29

Fla. Audubon Soc'y  v. Bentsen,
   94 F.3d 658 (D.C. Cir. 1996) (en banc) ...................................................... 13, 21

Grocery Mfrs. Ass'n v. EPA,
   693 F.3d 169 (D.C. Cir. 2012) ..........................................................................15

*Authorities chiefly relied upon are marked with an asterisk.

*Kennecott Corp. v. EPA*,
    684 F.2d 1007 (D.C. Cir. 1982) ................................................................. 41, 42

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...................................................................................14

*Massachusetts v. EPA*,
    549 U.S. 497 (2007) .....................................................................................6

*Morton v. Mancari*,
    417 U.S. 535 (1974) ...................................................................................29

*New York v. EPA*,
    413 F.3d 3 (D.C. Cir. 2005) ........................................................................19

*Parsons Steel, Inc. v. First Alabama Bank*,
    474 U.S. 518 (1986) ............................................................................. 27, 28

*Portland Cement Ass'n v. Ruckelshaus*,
    486 F.2d 375 (D.C. Cir. 1973) ....................................................................35

*Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*,
    489 F.3d 1279 (D.C. Cir. 2007) ...................................................................14

*Sierra Club v. Costle*,
    657 F.2d 298 (D.C. Cir. 1981) .....................................................................12

*Sierra Club v. EPA*,
    292 F.3d 895 (D.C. Cir. 2002) ................................................................ 14, 15

*United States v. Mead*,
    533 U.S. 218 (2001) ...................................................................................32

*Utah v. Evans*,
    536 U.S. 452 (2002) ...................................................................................21

*White Stallion Energy Ctr., LLC v. EPA*,

748 F.3d 1222 (D.C. Cir. 2014) .......................................................40

**RULES**

D.C. Cir. R. 28(a)(7) .......................................................................14

**STATUTES**

15 U.S.C. § 793(c)(1) ......................................................................35

42 U.S.C. § 4365 ............................................................. 9, 26, 28, 29

42 U.S.C. § 4365(a) ....................................................................7, 32

42 U.S.C. § 4365(c)(1).................................. 5, 8, 11, 26, 32, 33, 35, 36

42 U.S.C. § 4365(c)(2)................................................................. 26, 39

42 U.S.C. § 4365(e)(1)(A) ..............................................................32

42 U.S.C. § 4361(f)(1) ....................................................................33

42 U.S.C. § 7521(a) ..........................................................................1

42 U.S.C. § 7521(a)(1) ....................................................... 4, 6, 34, 39

42 U.S.C. § 7521(a)(2)....................................................................39

42 U.S.C. § 7521(a)(6)....................................................................33

42 U.S.C. § 7543(b) .......................................................................22

42 U.S.C. § 7571(a)(2)(B)(i).............................................................33

42 U.S.C. § 7607(b) ......................................................................1, 2

42 U.S.C. § 7607(d) ........................................... 2, 12, 26, 28, 29

42 U.S.C. § 7607(d)(7)................................................................. 26, 39

42 U.S.C. § 7607(d)(7)(A) ................................................................ 40

42 U.S.C. § 7607(d)(7)(B) ......................................... 2, 10, 28, 30, 32

42 U.S.C. § 7607(d)(8).......................... 3, 5, 11, 12, 26, 27, 28, 39

42 U.S.C. § 7607(d)(9)........................................................ 3, 5, 12, 28

49 U.S.C. § 32902(b) ........................................................................33

49 U.S.C. § 32902(j) ................................................................... 33, 34

## STATE STATUTES

Cal. Code Regs. Tit. 13 Section 1961.1 ................................................22

## FEDERAL REGISTERS

74 Fed. Reg. 49,454 (Sept. 28, 2009) ........................................... 31, 39

74 Fed. Reg. 66,496 (Dec. 15, 2009) ....................................................4

75 Fed. Reg. 25,324 (May 7, 2010) ......................... 4, 5, 7, 17, 20, 22, 23

76 Fed. Reg. 57,106 (Sept. 15, 2011) ...................................................... ii

78 Fed. Reg. 5347 (Jan. 25, 2013) .................................. 1, 3, 6, 9, 31, 32, 34, 36-39

## LEGISLATIVE HISTORY

H.R. Conf. Rep. 95-722, *reprinted in* 1977 U.S.C.C.A.N. 3283............................36

# GLOSSARY

| | |
|---|---|
| CAA | Clean Air Act |
| CAFE | Corporate Average Fuel Economy |
| EPA | Environmental Protection Agency |
| FOIA | Freedom of Information Act |
| NEPA | National Environmental Policy Act |
| NHTSA | National Highway Traffic Safety Administration |
| OMB | Office of Management and Budget |
| SAB | Science Advisory Board |

## JURISDICTIONAL STATEMENT

On May 7, 2010, the United States Environmental Protection Agency

("EPA" or "Agency") promulgated greenhouse gas emission standards under the

Clean Air Act ("CAA" or "Act") for passenger cars, light-duty trucks and medium-

duty passenger vehicles ("light-duty vehicles").  75 Fed. Reg. 25,324 (May 7,

2010) ("Car Rule") [JA0388].  The Agency issued these standards under CAA

Section 202(a), 42 U.S.C § 7521(a), for new light-duty vehicles for model years

2012 through 2016.

On April 21, 2011, Petitioners California Construction Trucking

Association, Inc.; Delta Construction Company, Inc.; Southern California

Contractors Association; Norman R. "Skip" Brown; William E. Davis; and Pacific

Legal Foundation ("Petitioners") filed a Petition for Reconsideration of EPA's

emission standards ("Reconsideration Petition").  On January 25, 2013, EPA

denied the Petition for Reconsideration.  78 Fed. Reg. 5347 (Jan. 25, 2013)

("Reconsideration Denial") [JA1434].  On March 25, 2013, Petitioners timely filed

this petition for judicial review under 42 U.S.C. § 7607(b), challenging EPA's

denial of the Reconsideration Petition.  Petitioners did not challenge the Car Rule

itself, which in any event was upheld by this Court in a separate challenge.  *See*

*Coal. for Responsible Regulation v. EPA*, 684 F.3d 102, 126-29 (D.C. Cir. 2012),

*cert. granted in part, limited to other grounds*, 134 S. Ct. 418 (2013).  The Court

has jurisdiction over Petitioners' challenge to EPA's Reconsideration Denial under 42 U.S.C. § 7607(b) and § 7607(d)(7)(B).  As demonstrated below, however, Petitioners lack standing to challenge EPA's Reconsideration Denial and their challenge is moot as well.

## STATUTES AND REGULATIONS

All applicable statutory and regulatory materials are provided in Respondent's Addendum to Opening Brief ("Resp. ADD").

## ISSUES PRESENTED

1.    Do Petitioners lack Article III standing where they have no injury from increased vehicle costs because fuel savings rapidly outweigh any increased costs?

2.    Do Petitioners lack Article III standing where any injury cannot be fairly traced to EPA's Reconsideration Denial or redressed by a favorable decision from the Court?

3.    Is Petitioners' challenge to EPA's Reconsideration Denial moot?

4.    Is the Court's review of EPA's Reconsideration Denial governed by the CAA, 42 U.S.C. § 7607(d)?

5.    Was EPA's Reconsideration Denial reasonable under the CAA, 42 U.S.C. § 7607(d)(7)(B), where:

      a.    Petitioners failed to submit any comment concerning whether the proposed Car Rule was made available to the Science Advisory Board ("Board" or "SAB") under the Environmental Research, Development, and Demonstration Authorization Act ("Board statute"), 42 U.S.C. § 4365?

      b.    the Board statute did not apply because EPA was not required to provide and did not provide its emission standards to any other agencies for "formal review?" and

      c.    EPA made the proposed emission standards "available" to the Board through electronic posting and subsequent publication in the Federal Register?

6.    Even if EPA committed a procedural error under the Board statute, did EPA nonetheless properly deny reconsideration where the error was not so serious and related to matters of such central concern that it was substantially likely the Rule would have been significantly changed under 42 U.S.C. §§ 7607(d)(8), (9)?

7.    Is vacatur and remand of the Car Rule appropriate?

## STATEMENT OF THE CASE

## I.    INTRODUCTION

This case concerns EPA's denial of Petitioners' administrative petition to reconsider EPA's rule establishing greenhouse gas emission standards for model

year 2012 through 2016 light-duty vehicles in the Car Rule.  *See* 78 Fed. Reg. 5347

[JA1434].  Petitioners submitted their Reconsideration Petition to EPA on April

21, 2011, nearly one year after EPA published the Car Rule.  *See* 75 Fed. Reg.

25,324 [JA0388].  EPA established these standards under CAA Section 202(a)(1),

42 U.S.C. § 7521(a)(1), as part of a collaborative effort with the National Highway

Traffic Safety Administration ("NHTSA") which simultaneously established

separate but consistent "corporate average fuel economy" ("CAFE") standards for

light-duty vehicles under the Energy Policy and Conservation Act.  No party has

substantively challenged either EPA's emission standards or NHTSA's fuel

economy standards.

Elevated concentrations of greenhouse gases are causing changes in the

Earth's climate.[1]  As a class, light-duty vehicles – like passenger cars and small

trucks – are the nation's largest mobile source of greenhouse gas emissions,

representing nearly 60 percent of all mobile source greenhouse gas emissions.

Resp. ADD77 (Regulatory Announcement at 2).  Together, EPA's and NHTSA's

Car Rule is the first-ever collaborative nationwide program establishing standards

---

[1] Greenhouse gases include carbon dioxide ($CO_2$), methane ($CH_4$), nitrous oxide
($N_2O$), hydrofluorocarbons (HFCs), perfluorocarbons (PFCs), and sulfur
hexafluoride ($SF_6$). 74 Fed. Reg. 66,496, 66,497 (Dec. 15, 2009) [JA0337, 0338].

to reduce greenhouse gas emissions, improve energy security, increase fuel savings, and allow all automobile manufacturers to build a single light-duty fleet that satisfies all federal requirements and those of California and other states that have adopted California's standards.  Resp. ADD76 (Regulatory Announcement at 1).  Over the lifetime of vehicles sold for model year 2012-2016, the Car Rule is projected to reduce greenhouse gas emissions in the United States by 960 million metric tons and save 1.8 billion barrels of oil.  75 Fed. Reg. at 25,346-47 [JA0411-12].

Petitioners are a construction company, two trade associations, two individuals, and the Pacific Legal Foundation, all located in California, who claim either to utilize light-duty vehicles subject to the Car Rule, or to represent companies who do so.  Their Reconsideration Petition focused on one procedural issue:  whether EPA complied with 42 U.S.C. § 4365(c)(1) under the Environmental Research, Development, and Demonstration Authorization Act ("Board statute") to make the proposed emission standards available to the Science Advisory Board.  Reconsideration Petition [JA1376-1433].  On January 25, 2013, EPA denied the Reconsideration Petition on several grounds, including that:  (i) Petitioners could have submitted, but failed to submit, any comment on this issue during the comment period; (ii) the Board statute did not apply; (iii) even if the statute applied, EPA complied with the statute; and (iv) under the CAA, 42 U.S.C.

§§ 7607(d)(8), (9), even if EPA committed procedural error, any such error was not so serious and related to matters of such central concern that it was substantially likely the emission standards would have been significantly changed if the Board had provided review and comment.  78 Fed. Reg. at 5348-50 [JA1435-37].

## II.    FACTUAL AND LEGAL BACKGROUND

### A.    The Clean Air Act

The CAA, 42 U.S.C. § 7521(a)(1), requires EPA to regulate emissions of certain air pollutants from motor vehicles "which in [the Administrator's] judgment cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare. . . ."  Greenhouse gases are "air pollutants" under this provision, *Massachusetts v.* EPA, 549 U.S. 497, 528-29 (2007), and EPA has determined that (1) atmospheric concentrations of greenhouse gases may reasonably be anticipated to endanger public health and welfare, and (2) emissions from new motor vehicles cause or contribute to that air pollution which endangers public health or welfare.  *See Coal. for Responsible Regulation*, 684 F. 3d at 113, 116-25 (upholding EPA's Endangerment Finding).

On May 19, 2009, President Obama announced a National Fuel Efficiency Policy "aimed at both increasing fuel economy and reducing greenhouse gas pollution for all new cars and trucks sold in the United States."

6

http://www.whitehouse.gov/the_press_office/President-Obama-Announces-National-Fuel-Efficiency-Policy/ Resp. ADD85.  On May 7, 2010, EPA and NHTSA each issued their final Car Rules to "implement a strong and coordinated Federal greenhouse gas . . . and fuel economy program for passenger cars, light-duty-trucks, and medium-duty passenger vehicles (hereinafter light-duty vehicles)[.]"  *See* 75 Fed. Reg. 25,324 [JA0388].

The Car Rule applies to model year 2012 through 2016 light-duty vehicles. EPA's greenhouse gas emission standards for those model years consist of three separate standards:  fleet-wide average carbon dioxide ("$CO_2$") emission standards for cars and trucks, 75 Fed. Reg. at 25,396 [JA0461], and two emission standards that cap tailpipe nitrous oxide ($N_2O$) and methane ($CH_4$) emissions.  *Id.*  The standards also are expected to control emissions of hydrofluorocarbons from vehicle air conditioning systems.  *Id.* at 25,339, 25,425-427 [JA0404, JA0490-92]. This Court previously upheld the Car Rule against all challenges in *Coal. for Responsible Regulation v. EPA*, 684 F.3d at 124-29.

### B.    The Science Advisory Board Statute

Congress directed EPA to establish the Science Advisory Board pursuant to the Environmental Research, Development, and Demonstration Authorization Act under 42 U.S.C. § 4365(a) ("Board statute").  That statute provides, in part, that:

[t]he Administrator, at the time any proposed . . . regulation under the

7

> Clean Air Act . . . is provided to any other Federal agency for formal
> review and comment, shall make available to the Board such proposed
> . . . regulation, together with relevant scientific and technical
> information in the possession of the [EPA] on which the proposed
> action is based.

*Id.* § 4365(c)(1).  In response, "[t]he Board may make available to the

Administrator . . . its advice and comments on the adequacy of the scientific and

technical basis of the proposed" agency action.  *Id.* § 4365(c)(2).

### C.     Factual Background

On September 15, 2010 – more than four months after EPA and NHTSA

published the final Car Rule – Petitioners submitted a Freedom of Information Act

("FOIA") request to EPA asking for information concerning, *inter alia*, whether

EPA submitted the proposed Car Rule to the Board.  Pet. ADD B-1.  Notably,

Petitioners never submitted any comments – including any comments concerning

applicability of the Board statute – during the comment period on the proposed Car

Rule.  On November 10, 2010, EPA responded to the FOIA request, stating that

the Agency did not have responsive documents.  Pet. ADD C-1.

On April 21, 2011 – nearly one year after EPA issued the Car Rule and five

months after receiving EPA's FOIA response – Petitioners submitted their

Reconsideration Petition to EPA.  Pet. ADD D-1.  The sole basis for their

Reconsideration Petition was an alleged procedural error by EPA in not making the

proposed emission standards available to the Board under the Board Statute, 42

8

U.S.C. § 4365.  Pet. ADD D-1.  EPA denied the petition for reconsideration on

January 25, 2013.  78 Fed. Reg. 5347 [JA1434].

## SUMMARY OF ARGUMENT

Petitioners raise a single procedural challenge to EPA's Reconsideration

Denial.  That challenge lacks merit.  The Court should dismiss the petition without

reaching the merits, however, because Petitioners have failed to demonstrate

standing and their challenge is moot.

Specifically, with respect to standing, the vague allegations in Petitioners'

declarations fall short of showing they have suffered or imminently will suffer any

concrete and particularized injury.  Most importantly, the declarants fail to even

acknowledge, much less grapple with, EPA's unchallenged finding that any

increased costs of vehicles will be substantially and quickly outweighed by the fuel

savings associated with model year 2012 through 2016 vehicles.

Further, even if Petitioners had any economic injury from increased vehicle

costs, it could not be fairly traced to EPA's Reconsideration Denial, nor redressed

by the Court through any remand or vacatur of the Reconsideration Denial.

Because all Petitioners are in California, even if they do purchase light-duty

vehicles, any injury from increased vehicle costs will continue to exist due to

California's standards for light-duty vehicles regardless of EPA's emission

standards.  Further, because both EPA and NHTSA established separate standards

9

under their respective statutory authorities, any increased vehicle costs would still exist by virtue of the NHTSA standards, by themselves, even if EPA were to reconsider the Petition.

In addition, Petitioners' challenge is now moot.  EPA's emission standards cover model year 2012 through 2016 light-duty vehicles, and the only model year that has not been manufactured or is not currently in the process of being manufactured is 2016, which will be underway on January 2 of next year.  Any mandate from the Court would not likely issue until later this year.  Thus, even if the Court directed EPA to reconsider its Denial, EPA's process to do so likely would not be completed until next year, at which point there would be no meaningful relief Petitioners could obtain relating to model year 2016 vehicles that would be in the manufacturing phase, much less to earlier model year vehicles that already have been manufactured.

As to the merits, Petitioners' procedural claim fails on multiple fronts.  First, Petitioners fail to demonstrate, as they must, that it was impracticable for them to raise their objection concerning Board review during the comment period.  42 U.S.C. § 7607(d)(7)(B).  Even if Petitioners had raised a timely objection, however, EPA reasonably denied the Reconsideration Petition based on the conclusion that the Board statute did not apply because EPA was not required to and did not provide the proposed emission standards to other federal agencies "for

formal review and comment." 42 U.S.C. § 4365(c)(1). Further, even if the Board statute applied, EPA reasonably complied with the statute by making the proposed emission standards "available" to the Board through electronic posting and subsequent publication in the Federal Register.

Even if, for sake of argument, EPA had committed any procedural error by not making the proposed standards available to the Board, Petitioners have not demonstrated that this error was "so serious and related to matters of such central relevance to the rule that there is a substantial likelihood that the rule would have been significantly changed if such errors had not been made." 42 U.S.C. § 7607(d)(8). None of the public comments seriously disputed the technological issues in the rulemaking and Petitioners never identify any scientific or technical information on which they believe the Board may have chosen to comment. Petitioners also fail to show that any such comments would have been substantially likely to significantly change the Rule.

Finally, Petitioners' demand for vacatur and remand of the Car Rule itself is wholly unwarranted. Petitioners have not challenged the Car Rule and cannot obtain any relief with respect to those standards. The only relief they conceivably could obtain in this case is relief with respect to the action they challenged: EPA's Reconsideration Denial. Vacatur of the Reconsideration Denial is unwarranted, however, given that any procedural infirmity did not rise to the level of seriousness

11

under the CAA that warrants such relief, and there is no meaningful relief EPA could provide.

For these reasons, the Court should dismiss the petition for lack of standing and mootness, or deny the petition.

## STANDARD OF REVIEW

The CAA, 42 U.S.C. §§ 7607(d)(8), (9), defines the standard of judicial review of EPA's Reconsideration Denial, under which a reviewing court may invalidate an EPA action based on alleged procedural errors "only if the errors were so serious and related to matters of such central relevance to the rule that there is a substantial likelihood that the rule would have been significantly changed if such errors had not been made." *Id.* § 7607(d)(8).  This Court has held that these provisions "assign this court a restricted role in reviewing" the rulemaking actions that are subject to 42 U.S.C. § 7607(d). *Am. Petroleum Inst. v. Costle*, 665 F.2d 1176, 1184 (D.C. Cir. 1981) (citation omitted).  "Congress was concerned that EPA's rulemaking not be casually overturned for procedural reasons[.]" *Id.* (quoting *Sierra Club v. Costle*, 657 F.2d 298, 391-92 (D.C. Cir. 1981)).  Indeed, "[r]eversal for procedural defaults under the Act will be rare[.]" *Id.* (citations omitted); *see Am. Petroleum Inst.*, 665 F.2d at 1187 (reiterating findings that must be made under CAA Section 307(d) procedural provisions to invalidate a rule for procedural error).

12

EPA's statutory interpretation must be reviewed under *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984).  If Congress "has directly spoken to the precise question at issue," the Court "must give effect to the unambiguously expressed intent of Congress."  *Id.* at 842-43.  If the statute is "silent or ambiguous with respect to the specific issue," the Court must defer to the agency's interpretation so long as it is "based on a permissible construction of the statute."  *Id*. at 843.

## ARGUMENT

## I.     PETITIONERS LACK STANDING TO CHALLENGE EPA's RECONSIDERATION DENIAL AND THEIR CHALLENGE IS MOOT.

Article III of the United States Constitution limits the jurisdiction of federal courts "to actual cases or controversies between proper litigants."  *Fla. Audubon Soc'y  v. Bentsen*, 94 F.3d 658, 661 (D.C. Cir. 1996) (en banc) (citation omitted).  "The doctrines of standing and mootness reflect and enforce those limitations."  *Chamber of Commerce v. EPA*, 642 F.3d 192, 200 (D.C. Cir. 2011) (citations omitted).  Standing is determined "as of the time a suit commences."  *Id.*  Standing, however, is not enough by itself; mootness comes into play also because "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."  *Id.* (citations omitted).  Here, Petitioners not only lack standing, but their challenge is now moot as well.

13

### A.    Petitioners Have Failed To Demonstrate Standing.

Petitioners have three irreducible constitutional requirements to demonstrate for standing:  (1) they have suffered an "injury in fact" that is actual and imminent, not conjectural or hypothetical; (2) the injury complained of is caused by or fairly traceable to the challenged action of EPA; and (3) it is likely that the injury will be redressed by a favorable decision.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see Sierra Club v. EPA*, 292 F.3d 895, 898, 900-01 (D.C. Cir. 2002).  Standing "is 'substantially more difficult to establish' where, as here, the parties invoking federal jurisdiction are not 'the object of the government action or inaction' they challenge."  *Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1289 (D.C. Cir. 2007) (quoting *Lujan*, 504 U.S. at 562). Petitioners must establish standing in their opening brief and, if any element of standing is not evident from the administrative record, they must submit sufficient affidavits or other evidence.  *Lujan*, 504 U.S. at 560-61; *see* D.C. Cir. R. 28(a)(7).

Petitioners provide three declarations to support their claims for standing: (1) Lee Brown – Executive Director for Petitioner California Construction Trucking Association (a trade association for trucking companies), Pet. ADD F-1 ("California Construction Decl."); (2) Norman Brown – owner of Delta Construction Company and individual purchaser of light duty vehicles, *id.* F-5 ("Delta Decl."); and (3) William Davis – an individual who claims to purchase

14

light-duty vehicles, *id.* F-16 ("Davis Decl.").[2]  As a trade association, California

Construction must demonstrate either associational standing (to sue on behalf of its

members) or organizational standing (to sue on its own behalf).  It can do neither.

For associational standing, California Construction must "show that (1) a

member 'would have standing to sue in [its] own right,' (2) 'the interests the

association seeks to protect are germane to its purpose[]' and (3) 'neither the claim

asserted nor the relief requested requires that an individual member of the

association participate in the lawsuit.'"  *Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169,

174-75 (D.C. Cir. 2012) (quoting *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir.

2002)).  Neither California Construction's Declaration nor Petitioners' brief

contains any arguments or facts to support associational standing.  Specifically,

there are no allegations concerning California Construction's purpose and how the

interests it seeks to protect are germane to that purpose.  Further, as discussed

below, no individual member has demonstrated standing.  Thus, California

Construction does not have associational standing.  Finally, to show organizational

standing in its own right, California Construction must show the same three

irreducible constitutional requirements that Mr. Norman Brown (as an individual

---

[2]  Petitioners did not provide any declaration for the Southern California
Contractors Association or the Pacific Legal Foundation.

and on behalf of Delta Construction) and Mr. Davis must show for their individual

standing, which are lacking for all Petitioners, as discussed below.

> **1.     Petitioners lack a concrete, particularized, and imminent injury.**

To establish injury sufficient for standing, Petitioners must show that their

injury is "concrete, particularized, and actual or imminent[.]"  *Clapper v. Amnesty*

*Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (citation and internal quotation marks

omitted).  "Although imminence is concededly a somewhat elastic concept, it

cannot be stretched beyond its purpose, which is to ensure that the alleged injury is

not too speculative for Article III purposes–that the injury is *certainly* impending."

*Id.* (citation omitted) (emphasis in original).  "[A]llegations of *possible* future

injury are not sufficient."  *Id.* (citation omitted) (emphasis in original).  Here,

Petitioners make only vague claims of injury from increased vehicle costs, without

*any* allegations of injuries that have happened or are certainly impending.  Not

only are these vague allegations insufficient to demonstrate standing, they also are

disproved by the administrative record.

Petitioners' nearly identical declarations claim the same injury:  "that the

costs of new cars and other light duty vehicles will increase as a result of the Car

Rule, because the additional costs of manufacturing such vehicles attributable to

the Car Rule will be passed on from manufacturers to consumers[.]"  California

Construction Decl. ¶ 6; *see* Delta Decl. ¶ 7 (same); Davis Decl. ¶ 6 (same).  Each

declarant claims it or its members own, lease, or operate unidentified light-duty

vehicles subject to the Car Rule.  California Construction Decl. ¶¶ 3-4; Delta Decl.

¶¶ 4-5; Davis Decl. ¶¶ 3-4.  There are several problems with these imprecise

allegations.

First, Petitioners ignore a key finding by EPA:  that any increased vehicle

costs would be more than offset very quickly by the money not spent on fuel.  As

provided in the final preamble:

> the average cost increase for a model year 2016 vehicle due to the
> National Program will be less than $1,000.  The average U.S.
> consumer who purchases a vehicle outright is estimated to save
> enough in lower fuel costs over the first three years to offset these
> higher vehicle costs.  However, most U.S. consumers purchase a new
> vehicle using credit rather than paying cash and the typical car loan
> today is a five year, 60 month loan.  These consumers will see
> immediate savings due to their vehicle's lower fuel consumption in
> the form of a net reduction in annual costs of $130-$180 throughout
> the duration of the loan (that is the fuel savings will outweigh the
> increase in loan payments by $130-$180 per year).  Whether a
> consumer takes out a loan or purchases a new vehicle outright, over
> the lifetime of a model year 2016 vehicle, the consumer's net savings
> could be more than $3,000.[3]

75 Fed. Reg. at 25,328-29 [JA0393-94].

---

[3] EPA used model year 2016 for this analysis because the emission standards are
most stringent for that model year, so the estimated vehicle costs would be highest
for that model year.

This "payback period" is supported by EPA's Regulatory Impact Analysis, where EPA specifically addressed "how long would it take for the expected fuel savings to outweigh the increased cost of a new vehicle." Regulatory Impact Analysis at 8-13, 8-14 [JA2527-28]. For a consumer who buys a new 2016 vehicle using cash, EPA calculated that it would take 2 years and 7 months at a 3% discount rate, or 2 years and 9 months at a 7% discount rate, "for the cumulative fuel savings to exceed the upfront increase in vehicle costs." Regulatory Impact Analysis at 8-14, Table 8-3 [JA2528]. This payback period may come sooner or later, depending on how many vehicle miles the driver travels; but, in any case, the payback period is very early in the vehicle's useful life. *Id.*

For the majority of consumers who use credit to purchase a new 2016 light-duty vehicle, EPA used a typical five-year loan period with an average interest rate of 6.54 percent. Regulatory Impact Analysis at 8-14 [JA2528]. In that scenario, "the fuel savings immediately outweigh the increased payments on the car loan, amounting to $177 in discounted net savings (3% discount rate) saved in the first year and similar savings for the next two years before reduced [vehicle miles traveled] starts to cause the fuel savings to fall." *Id.* The results were similar using a 7% discount rate. *Id.* Thus,

> for every month that the average owner is making a payment for the financing of the average new vehicle their monthly fuel savings would be greater than the increase in the loan payments. This amounts to a

18

> savings on the order of $9 to $15 per month throughout the duration
> of the 5 year loan.  Note that in year six when the car loan is paid off,
> the net savings equal the fuel savings (as would be the case for the
> remaining years of ownership).

Regulatory Impact Analysis at 8-14, 8-15 [JA2528, 2529].  Finally, for consumers

that drive the vehicle for its entire life, at a projected national average miles per

year, the lifetime net savings (regardless of a cash or credit purchase) will be

between $2,300 (at a 7% discount rate) and $3,100 (at a 3% discount rate).

Regulatory Impact Analysis at 8-15 [JA2529].  Thus, as shown from EPA's

analysis, any increased vehicle costs will be more than offset by fuel savings.

Petitioners do not challenge this analysis and therefore they have waived any

opportunity to do so now.[4]  *See New York v. EPA*, 413 F.3d 3, 20 (D.C. Cir. 2005)

("argument was not made by industry petitioners in their opening brief and is

therefore waived").  Because EPA's unchallenged record shows fuel savings will

---

[4] The California Construction Declaration cites, without any reference, an
unidentified J.D. Powers study.  The declaration claims that this study looked at
the "impacts of the Car Rule" and concluded "that the stringent standards have
substantially increased costs while decreasing reliability."  California Construction
Decl. ¶ 8.  It is unclear what "study" the declarant is referring to, but it appears to
be a 2014 Vehicle Dependability Study, which is an annual survey of owners after
three years of vehicle purchase.  *See* http://autos.jdpower.com/ratings/2014-
Vehicle-Dependability-Study-Press-Release.htm.  That study, however, covered
model year 2011 vehicles, which are not covered by the Car Rule.  Thus, this study
has no relevance here.

quickly offset any increased vehicle costs so that purchasers will have net cost savings, Petitioners cannot show that EPA's Rule will injure them economically.

Second, there are no allegations that Petitioners have incurred or imminently will incur these increased vehicle costs. Petitioners fail to provide any specific or concrete allegations that they will be injured based on the *likelihood* of purchasing vehicles that will have increased costs. *See City of Waukesha v. EPA*, 320 F.3d 228, 237 (D.C. Cir. 2003) (petitioners "provided no affidavit that establishes with specificity and concreteness any particular member . . . is likely to suffer increased . . . costs"). There are no allegations that Petitioners intend to purchase or have purchased model year 2012 through 2016 vehicles that are subject to the Car Rule, let alone that they will be purchasing or have purchased light-duty vehicles that actually have increased costs because of EPA's standards.

Moreover, EPA's emission standards apply "fleetwide" – meaning that a manufacturer must comply with the emission standards for its entire fleet, not for a particular model or models. 75 Fed. Reg. at 25,405 [JA0470]. Manufacturers also can take advantage of the averaging, banking, and trading flexibility provisions in the Rule. *Id*. The fleetwide standards and averaging, banking, and trading opportunities mean that not every vehicle needs to meet the Rule's standards and, consequently, not every vehicle in a manufacturer's fleet will have new technology or increased costs. Petitioners therefore might be able to purchase model year

20

2012 through 2016 vehicles, the costs of which will remain unaffected by the Rule.

Thus, without more specific allegations, Petitioners' claim that they will incur

increased vehicle costs is entirely speculative.  In any case, even if Petitioners had

made more specific allegations concerning the purchase of vehicles, any increased

costs quickly would be more than fully offset by fuel savings and Petitioners still

would demonstrate no injury.  Petitioners therefore have failed to demonstrate a

concrete, particularized, and immediate injury sufficient for standing.

> **2.      Petitioners' asserted injury is neither caused by EPA's
> Reconsideration Denial nor capable of being redressed by
> the Court.**

"Causation, or 'traceability,' examines whether it is *substantially probable*

that the challenged acts of the defendant, not of some absent third party, will cause

the particularized injury of the plaintiff."  *Fla. Audubon Soc'y*, 94 F.3d at 663

(emphasis added) (citations omitted).  Redressability requires "that it be likely, as

opposed to merely speculative, that the injury will be redressed by a favorable

decision."  *Chamber of Commerce*, 642 F.3d at 201 (citation omitted).  Any

success on the merits must yield a "significant increase in the likelihood that the

[petitioners] would obtain relief that directly redresses the injur[ies] suffered."

*Utah v. Evans*, 536 U.S. 452, 464 (2002).  Here, Petitioners have failed to show

how EPA's Reconsideration Denial has caused or will cause their alleged injuries

or that such injury can be redressed by the Court.

First, California has revised its regulations such that compliance with EPA's standards will be deemed to be compliance with California's greenhouse gas standards. In conjunction with EPA and NHTSA's issuance of their standards, the state of California (which previously adopted its own greenhouse gas standards for new light-duty vehicles) committed to revise its regulations such that compliance with EPA's and NHTSA's standards would be deemed compliance with the California standards. 75 Fed. Reg. at 25,329 [JA0394]. California has since honored that commitment. *See* Cal. Code Regs. Tit. 13 Section 1961.1. Resp. ADD41-56. *See also Chamber of Commerce*, 642 F.3d 192 (dismissing challenges to EPA's grant of waiver under CAA 42 U.S.C. § 7543(b) for California light-duty greenhouse gas standards). Absent EPA's emission standards, light-duty vehicle manufacturers would be required to comply with California's 2004 greenhouse gas standards, which were more stringent for model year 2012 through 2016 vehicles than the current Car Rule for vehicles sold in California. Thus, even without EPA's emission standards, Petitioners would face increased vehicle costs from California's standards.[5]

---

[5] This Court upheld EPA's granting of a waiver for California's light-duty vehicle greenhouse gas standards in *Chamber of Commerce*, 642 F.3d at 199-212, where the Court found that no petitioner had standing to challenge the waiver.

Second, even Petitioners acknowledge that any increase in vehicle costs is attributable to NHTSA's standards in addition to EPA's emission standards.  Lee Brown Decl. ¶ 7.  Therefore to the extent Petitioners have any injury from increased costs, it is not fairly traceable to EPA's emission standards alone or, by extension, to EPA's Reconsideration Denial; rather, an injury of increased vehicle costs will exist even in the absence of EPA's emission standards because NHTSA's fuel economy standards – which Petitioners have not challenged – would still be in place.  As EPA explained, "[t]he two agencies' standards comprise the National Program, and this discussion of costs and benefits of EPA's [greenhouse gas] standard does not change the fact that *both the CAFE and [greenhouse gas] standards, jointly,* are the source of the benefits and costs of the National Program."  75 Fed. Reg. at 25,509 (emphasis added) [JA0574].

Further, as to redressability, it is important to note that Petitioners' challenge is to EPA's Reconsideration Denial – *not* to the Car Rule itself.  Thus, the most relief Petitioners could obtain is an order from the Court vacating and remanding EPA's Reconsideration Denial for further consideration of the administrative petition.  Petitioners, however, improperly conflate their challenge to EPA's Reconsideration Denial with a challenge to the Rule itself, by claiming that "[i]f the Car Rule were to be vacated," they would no longer be injured.  California Construction Decl. ¶ 11; Delta Decl. ¶ 10 (same); Davis Decl. ¶ 7 (same).  But

23

Petitioners must show that any injury could be redressed through a decision on the only action before the Court:  EPA's Reconsideration Denial.  Any such decision, however, will not redress Petitioners' alleged injury because, as discussed above, California's and NHTSA's standards will still be in place regardless.

Moreover, it is entirely speculative, as opposed to likely, that a favorable decision will redress Petitioners' injuries.  *Chamber of Commerce*, 642 F.3d at 201.  As explained *infra* pp. 38-43, even if the Court vacates and remands EPA's Reconsideration Denial, and EPA were to make the Rule available to the Board, there is no demonstrated likelihood that the Board would actually review and comment on EPA's emission standards, or that any such comment would result in significant changes to EPA's emission standards.  Given this speculative chain, there will be no redress even if EPA reconsiders its Denial.  Petitioners therefore have failed to demonstrate standing.

## B.    Petitioners' Challenge Is Moot.

"Even where [the] litigation poses a live controversy when filed," the Court "must dismiss a case as moot if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future."  *Chamber of Commerce*, 642 F.3d at 200 (citation and internal quotation marks omitted).  The Car Rule covers model year 2012 through 2016 light-duty vehicles.  Model years 2012 through 2014 are behind us

24

because those vehicles have been manufactured.  Thus, the only two years for which EPA possibly could reconsider its Reconsideration Denial would be 2015, for which manufacturing is already underway, and 2016, which will be underway on January 2 of next year.  Reasonably, by the time a decision is issued by the Court, much of model year 2015 vehicles will have been produced, leaving only model year 2016.  Even if the Court ordered EPA to reconsider its Reconsideration Denial with respect to that model year, Petitioners have failed to demonstrate any likelihood that such reconsideration could provide them relief, as discussed *supra* pp. 23-24.

Further, if EPA is required to reconsider its Reconsideration Denial, EPA reasonably would not complete the reconsideration process until sometime in 2015 (given the likely timing of a decision in the current case) – again, at a point when model year 2016 light-duty vehicles would already be in production.  Thus, there likely would be no effect even if EPA reconsidered its Reconsideration Denial.  Petitioners' challenge therefore is moot.  *See Chamber of Commerce*, 642 F.3d at 204 ("even if the petitioners had been able to establish injury in [model years] 2009-11 sufficient to confer standing, any injury that did occur during that period is now moot").

## II.     EPA PROPERLY DENIED THE RECONSIDERATION PETITION.

If the Court concludes it has jurisdiction, Petitioners' procedural argument nonetheless lacks merit.  Petitioners' sole challenge to EPA's emission standards is a procedural one based on the Board statute, 42 U.S.C. § 4365.  Under that statute, if EPA provides a proposed regulation to other federal agencies for "formal review and comment," EPA must also make that proposed regulation "available" to the Board for "advice and comments on the adequacy of the scientific and technical basis" of the proposed action.  *Id.* § 4365(c)(1), (2).  The Board *may* then choose to provide comments.  *Id.* § 4365(c)(2).  According to Petitioners, EPA failed to heed that mandate here.  Pet. Br. Argument I.  For the reasons discussed below, this procedural argument has no merit.  Moreover, their argument that the CAA judicial review provisions in 42 U.S.C. § 7607(d) do not apply ignores the explicit language of that section and is contrary to this Court's precedents.

### A.     The CAA Applies To Reviewing Compliance With The Board Statute.

Petitioners argue that the issue of whether EPA complied with the Board statute is not governed by the CAA's procedural review provisions in 42 U.S.C. § 7607(d).  Pet. Br. 17-21.  That argument has no merit.

First, this Court already has applied the CAA judicial review provisions in 42 U.S.C. § 7607(d) to alleged procedural violations under the Board statute.  In

26

*American Petroleum Institute*, the Court discussed the restrictive review standards under 42 U.S.C. § 7607(d)(7), (8), before applying them to EPA's alleged failure to provide a proposed ozone standard to the Board. *See* 665 F.2d at 1187-89. Although the Court found that EPA failed to comply with this procedural requirement, the Court could not find "that this error was 'so serious and related to matters of such central relevance to the rule that there [was] a substantial likelihood that the rule would have been significantly changed' had the proposed standards been submitted to the SAB." *Id.* at 1189 (quoting 42 U.S.C. § 7607(d)(8)). Later, in *Coalition for Responsible Regulation*, the Court once again applied the CAA judicial review provisions in 42 U.S.C. § 7607(d) to find that "even if EPA violated its mandate by failing to submit the Endangerment Finding to the SAB," the petitioners failed to show "that this error was 'of such central relevance to the rule that there is a substantial likelihood that the rule would have been significantly changed if such errors had not been made.'" 684 F.3d at 124 (citing 42 U.S.C. § 7607(d)(8)).

Petitioners do not point to any case where the Court has declined to apply the CAA review provisions to an alleged procedural error under the Board statute. Instead, Petitioners argue that the rationale of *American Petroleum Institute* has been superseded by *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518 (1986). Pet. Br. 18. *Parsons*, however, concerned whether the Full Faith and

27

Credit Act had been limited by an exception to the Anti-Injunction Act that allowed federal courts to grant injunctions against state court proceedings in certain circumstances. The Supreme Court noted that "whenever possible, statutes should be read consistently." 474 U.S. at 524. The Court then found that the two statutes could be construed consistently by limiting the Anti-Injunction Act exception to certain situations and allowing the Full Faith and Credit Act to apply outside those situations. *Id.*

Petitioners rely on *Parsons* to try to disavow *American Petroleum Institute*. Pet. Br. 18-19. Nothing in *American Petroleum Institute*, however, conflicts with *Parsons*. Indeed, the Board statute and CAA Section 307(d) can be read consistently and harmonized, just as the *American Petroleum Institute* court did and just as *Parsons* advised. *Parsons* does not cast any doubt, explicitly or implicitly, on *American Petroleum Institute* or *Coalition for Responsible Regulation*. The CAA, 42 U.S.C. § 7607(d), therefore applies to the Court's review of EPA's Reconsideration Denial.

Moreover, the Board statute itself, 42 U.S.C. § 4365, neither contains a judicial review provision nor says that judicial review under the cited environmental statutes is superseded. Conversely, the CAA, 42 U.S.C. § 7607(d), contains specific provisions concerning judicial review of alleged procedural errors by EPA, *id.* § 7607(d)(8), (9), and concerning the circumstances under which EPA

shall convene a reconsideration proceeding. *Id.* § 7607(d)(7)(B). These specific CAA judicial review provisions do not create any conflict between the two statutes, as Petitioners suggest, Pet. Br. 18. Rather, it is quite easy to harmonize these two statutes. "When two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Detweiler v. Pena*, 38 F.3d 591, 594 (D.C. Cir. 1994) (citing *Morton v. Mancari*, 417 U.S. 535, 551 (1974)).

Petitioners' approach disregards this canon of construction. Under their argument, the CAA's judicial review limitations in 42 U.S.C. § 7607(d) (and for that matter, every other environmental statute referenced in the Board statute, 42 U.S.C. § 4365) would be nullified whenever there is an alleged procedural failure by EPA under the Board statute, *i.e.*, an alleged failure to "make available" to the Board a "criteria document, standard, limitation, or regulation[.]" *Id.* Such construction flies in the face of Congress' carefully crafted judicial review provisions of 42 U.S.C. § 7607(d) and creates a situation where "procedural defaults" are not "rare," *Am. Petroleum Inst.*, 665 F.2d at 1187, but instead are found without any consideration given to the contextual factors provided by Congress.

**B.    EPA Reasonably Denied The Reconsideration Petition Where Petitioners Failed To Demonstrate That Submitting A Comment Concerning Board Review Was Impracticable During The Comment Period.**

Turning to the merits of Petitioners' procedural challenge, EPA reasonably denied the Reconsideration Petition for multiple reasons. As a fundamental matter, Petitioners failed to demonstrate in their reconsideration petition that it was "impracticable" for them to raise their objection concerning the Board statute during the Car Rule comment period. *See* 42 U.S.C. § 7607(d)(7)(B). Only objections raised during the public comment period may be raised during judicial review, unless it was "impracticable" to raise the objection during the public comment period. *Id.* Petitioners, however, contend they could not practicably raise the Board issue until they received a response to a Freedom of Information Act ("FOIA") request – a request they did not submit to EPA until nearly ten months after the public comment period on the proposed Rule closed. *See* Pet. Br. 32 (public comment period closed November 27, 2009; Petitioners submitted FOIA request on September 15, 2010; EPA responded to FOIA request on November 10, 2010); Pet. ADD B-1. This argument is unavailing for two reasons.

First, whether EPA was required to make the proposed Rule available to the Board for review presents a pure legal issue that could have and should have been raised during the public comment period, and one that did not require further

30

factual information from a FOIA response or otherwise.  *See* 78 Fed. Reg. at 5348

("[Petitioners'] objection is legal in nature, and thus could be raised at any time.")

[JA1435].  As EPA pointed out in its Reconsideration Denial, there was nothing

impracticable about raising a straightforward legal issue such as this during the

comment period.  *Id.*

      Second, EPA's proposed Car Rule provided Petitioners with actual

knowledge of the other informal interagency reviews that were being provided by

EPA.  Specifically, the proposed Car Rule contained a section entitled "Statutory

and Executive Order Reviews."  74 Fed. Reg. 49,454, 49,628 (Sept. 28, 2009)

[JA0001, JA0175].  Under that section, EPA specifically discussed that it provided

the proposal to the Office of Management and Budget ("OMB") under Executive

Order 12866 because it was an "economically significant regulatory action."  *Id.*

As discussed below, however, this is merely an "informal" review (within the

meaning of the Board statute) that does not trigger application of the Board statute.

*See infra* pp. 33-35.  EPA also noted that it provided the proposal to OMB for

review under the Paperwork Reduction Act, 44 U.S.C. § 3501 *et seq.* – another

informal review process.   74 Fed. Reg. at 49,628 [JA0175].  Thus, if Petitioners

had concerns about the Board statute being triggered by such reviews, they

reasonably should have presented their position that such reviews were "formal"

reviews triggering application of the Board statute and commented accordingly. Petitioners failed to do so.

In short, EPA reasonably denied the Reconsideration Petition under 42 U.S.C. § 7607(d)(7)(B) based on the logical conclusion that it was practicable for Petitioners to submit a comment concerning Board review during the Car Rule comment period.

## C.    The Board Statute Does Not Apply.

EPA's Reconsideration Denial also should be upheld because EPA reasonably concluded that the Board statute did not even apply here.  78 Fed. Reg. at 5348 ("[Pacific Legal Foundation] fails to demonstrate that 42 U.S.C. § 4365(c)(1) is applicable.") [JA1435].  To show that the Board statute is applicable, Petitioners had to demonstrate that EPA's proposed emission standards were "provided to any other Federal agency for formal review and comment[.]"  42 U.S.C. § 4365(c)(1).  Petitioners failed to make this showing.

As an initial matter, to the extent there is any ambiguity over what constitutes "formal review and comment," EPA administers the Board statute and therefore is entitled to deference under *Chevron*, 467 U.S. at 842-45; *see United States v. Mead*, 533 U.S. 218, 227-31 (2001).  EPA is the sole entity charged with "establish[ing] a Science Advisory Board . . . ."  42 U.S.C. § 4365(a).  EPA, along with the Board, also can establish "member committees and investigative panels as

32

. . . necessary to carry out this section." *Id.* § 4365(e)(1)(A). Also, "[u]pon the recommendation of the Board, the Administrator shall appoint a secretary, and such other employees as deemed necessary to exercise and fulfill the Board's powers and responsibilities." *Id.* § 4365(f)(1). Lastly, only EPA is given the responsibility of "mak[ing] available to the Board" the specified proposed regulatory and other agency actions for "review and comment." *Id.* § 4365(c)(1). Because EPA is the exclusive agency charged with administering the Board statute, EPA should be entitled to deference in its interpretations to administer that statute.

Congress has not spoken directly to the issue of what "formal review" means under the Board statute. Thus, under *Chevron* step two, EPA's interpretation of that ambiguous term should be upheld if it is permissible, which it is.

Under EPA's interpretation of the Board statute, "formal review" occurs when a statute requires an agency to consult with sister agencies (and the consultation occurs) before it can take action. For example, CAA Section 231(a)(2)(B)(i), 42 U.S.C. § 7571(a)(2)(B)(i), requires EPA to "consult with the Administrator of the Federal Aviation Administration on aircraft engine emission standards" before issuing any such standards. Also, under CAA Section 202(a)(6), EPA is required "after consultation with the Secretary of Transportation" to issue regulations requiring that light-duty vehicles have onboard vapor recovery

33

systems. *Id.* § 7521(a)(6). Finally, the very provisions under which NHTSA acted in the Car Rule, 49 U.S.C. §§ 32902(b) and (j), requires NHTSA to consult with the Secretary of Energy and the EPA Administrator as a precondition to regulatory action. *See Coalition for Responsible Regulation,* 684 F.3d at 124 (citing 49 U.S.C. § 32902(j), which details a formal process by which the Secretary of Transportation must obtain comment from the Secretary of Energy before issuing or amending light-duty vehicle fuel economy standards). In contrast, 42 U.S.C. § 7521(a)(1) – the CAA provision under which EPA issued the Car Rule – contains no such requirements for formal agency review or consultation, nor do Petitioners argue as much.

Despite this, Petitioners argue that review by OMB was "formal review and comment." Pet. Br. 12-14. Review by OMB under Executive Order 12866, however, is merely informal agency review. 78 Fed. Reg. at 5348 [JA1435]. There are no provisions in the Executive Order stating how review of agency proposed rules is conducted, if or how OMB seeks comments from federal agencies on another's action, or how those agencies' comments, if any, are considered, documented, or transmitted. OMB is the sole arbiter of whether the submittal is provided in turn to other agencies for their comments. This ad hoc process is not formal review. Moreover, Petitioners' argument that the Executive Order specifies a formal review process for agency proposed rules rests entirely on

34

provisions of the Executive Order that are irrelevant to OMB review of agency

proposals.  See Pet. Br. 13-14.  Indeed, the various provisions of the Executive

Order dealing with "regulatory planning," *i.e.*, pre-rulemaking planning, on which

Petitioners rely have nothing to do with OMB review of proposed rules.

Thus, nothing in either the CAA or Executive Order 12866 supports that

submission to OMB of a proposed rule constitutes "formal review" under the

Board statute.  *See Coal. for Responsible Regulation*, 684 F.3d at 124 (noting that

where EPA also had provided a proposed regulation to OMB, "it is not clear that

EPA provided the Endangerment Finding 'to any other Federal agency for formal

review and comment'"); *id.* (quoting 42 U.S.C. § 4365(c)(1)).

Petitioners next erroneously claim that EPA's proposed emission standards

were submitted to a "variety of federal agencies under [the National Environmental

Policy Act ("NEPA")] for the draft environmental impact statement, as well as . . .

the Secretary of Energy" for "formal review and comment."  Pet. Br. 29.  Only

NHTSA's standards were submitted to other agencies for NEPA review – not

EPA's emission standards.  In fact, EPA's actions under the CAA are exempt from

NEPA review.  *See, e.g.*, *Portland Cement Ass'n v. Ruckelshaus*, 486 F.2d 375,

384 (D.C. Cir. 1973); 15 U.S.C. § 793(c)(1) (exemption from NEPA for action

taken by EPA under the CAA).  Petitioners therefore have failed to demonstrate

35

that the Board statute was triggered by any "formal review" and, thus, EPA's

denial of the Reconsideration Petition on that ground was reasonable.

> **D.    Even If The Board Statute Applies, EPA Complied By Making The Proposed Car Rule Available Through Electronic Posting And The Federal Register.**

Alternatively, EPA properly denied the Reconsideration Petition based on its

reasonable conclusion that even if the Board statute applied, EPA reasonably

complied with the mandate to make the proposed Rule "available" to the Board.

78 Fed. Reg. at 5349 [JA1436].  Petitioners improperly focus on the word "shall"

in the Board statute, Pet. Br. 9, when the proper focus should be on the phrase

"make available."  42 U.S.C. § 4365(c)(1).  EPA does not dispute that *if* the Board

statute is triggered, then EPA "*shall* make available" to the Board the proposed

regulation.[6]  Where Petitioners and EPA disagree, however, is on what it means to

"make available."  On that issue, EPA's position is reasonable and entitled to

deference under *Chevron*.

Petitioners point to nothing supporting that Congress has spoken directly to

the issue of what it means to make a proposed regulation "available."  EPA

---

[6] The legislative history Petitioners cite does not change the crux of the inquiry. *See* Pet. Br. at 11 (quoting Joint Explanatory Statement, H.R. Conf. Rep. 95-722 at 17, *reprinted in* 1977 U.S.C.C.A.N. 3283, 3296) ("The first paragraph of this subsection *requires* the Administrator of EPA to *make available* to the Board" any regulation) (emphasis added).  Nothing in that cited legislative history sheds any light on the meaning of "make available."

explained in its Reconsideration Denial its reasonable interpretation that

"available" means "accessible" or "obtainable."  78 Fed. Reg. at 5349 (quoting

Collins English Dictionary – Complete and Unabridged (Harper Collins 2003))

[JA1436].  EPA reasonably fulfilled that obligation by widely disseminating the

proposed emission standards through online posting and subsequently publishing

notice of them in the Federal Register.  Petitioners contend that EPA's

interpretation inappropriately "place[s] the onus on SAB to chase after EPA's

proposed rules rather than placing the onus on EPA to submit them to the SAB."

Pet. Br. 16.  Surely, however, the Board is just as, if not more, adept at "chas[ing]

down" proposed rules as members of the general public, who are required  to find

and keep track of agency actions published in the Federal Register for which they

seek to provide comment.  Thus, electronic dissemination and publication in the

Federal Register made the proposed Rule just as "available" to the Board as it did

to the general public for purposes of public comment.

Contrary to Petitioners' argument, EPA's interpretation does not "rewrite[]

the SAB statute . . . ."  Pet. Br. 17.  If Congress wanted EPA to physically "submit"

a proposed regulation to the Board (as Petitioners claim), it would have said so,

*e.g.*, by using the words "shall submit to the Board."  Instead, Congress used the

broader phrase "make available."  In this age of instantaneous electronic

submission, EPA reasonably determined that it could meet this statutory mandate

37

by making the proposed Rule available via electronic posting and Federal Register

publication.[7]  That interpretation is entitled to deference.

### E.    Even If EPA Committed A Procedural Error, It Does Not Rise To The Level Of Seriousness Required By 42 U.S.C. §§ 7607(d)(8), (9).

As in *American Petroleum Institute* and *Coalition for Responsible*

*Regulation*, even if EPA is found to have violated the Board statute's requirement

to make the proposed regulation "available" to the Board, "the circumstances

indicate that the error was not so central as to constitute grounds" for vacating and

remanding EPA's Reconsideration Denial.  *Am. Petroleum Inst.*, 665 F.2d at 1189;

*Coal. for Responsible Regulation*, 684 F.3d at 124.  Again, as demonstrated *supra*

pp. 26-29, the CAA's judicial review provision, 42 U.S.C. § 7607(d), applies and

that provision the Court could vacate and remand EPA's Reconsideration Denial

only if "the errors were so serious and related to matters of such central relevance

to the rule that there is a substantial likelihood that the rule would have been

---

[7] Petitioners challenge EPA's rationale for distinguishing the *American Petroleum Institute* Court's finding that EPA had not "submitted" a proposed regulation to the Board.  78 Fed. Reg. at 5349 [JA1436]; Pet. Br. 16.  As EPA explained, that case "antedated the present period of instantaneous availability of documents via electronic dissemination."  78 Fed. Reg. at 5349 n.1 [JA1436].  Moreover, the issue of what it means to make a proposed regulation "available" under the Board statute was not before the *American Petroleum Institute* Court.

38

significantly changed if such errors had not been made." *Am. Petroleum Inst.*, 665 F.2d at 1187 (quoting 42 U.S.C. § 7607(d)(7), (8)).

As EPA explained in its Reconsideration Denial, Petitioners have failed to demonstrate that there is a substantial likelihood that the Car Rule would have been significantly revised and, thus, that the issue of making the proposal available to the Board is of central relevance to the outcome of the Rule. 78 Fed. Reg. at 5349 [JA1436]. Specifically, in neither their Reconsideration Petition nor their brief do Petitioners make any claim about the specific "scientific and technical" matters on which the Board could have provided comment. 42 U.S.C. § 4365(c)(2).

As EPA pointed out, "substantial issues of pure science were not presented" in the proposed Car Rule. 78 Fed. Reg. at 5349 [JA1436]. "Instead the critical issues were what technologies are available for light-duty vehicles to reduce greenhouse gases for [model years] 2012-2016, the cost and effectiveness of those technologies, and their availability in the lead time provided by the rule" – the statutory factors under which EPA issues standards under 42 U.S.C. § 7521(a)(2)[8] – all of which are technology issues on which Board participation was "both less likely and less pertinent." *Id.* Furthermore, none of the public comments in the rulemaking seriously disputed these technological issues and, in fact, neither did

---

[8] *See generally* 74 Fed. Reg. 49,454, 49,464-65 (Sept. 28, 2009) [JA0001, JA0011-12] (discussing EPA's authority under 42 U.S.C. § 7521(a)(1) and (2)).

Petitioners themselves, who failed to submit *any* comments during the rulemaking. Even now, Petitioners' brief fails to mention any specific technological issue on which they think the Board could have provided review and comment and for which such comment would have been substantially likely to result in a significant change to the Rule, even *if* the Board would have chosen to provide comments.

Instead, Petitioners improperly rely on an extra-record declaration from Roger O. McClellan. Judicial review under 42 U.S.C. § 7607(d)(7)(A), however, is limited to the administrative record. Mr. McClellan's affidavit and testimony are not part of the administrative record for the Rule or for the Reconsideration Petition. The Court therefore must disregard his declaration. *See White Stallion Energy Ctr.*, *LLC v. EPA*, 748 F.3d 1222, 1249 (D.C. Cir. 2014) ("We cannot consider the data from petitioners' independent resampling, which was conducted after the Final Rule issued and was not part of the administrative record." (citing 42 U.S.C. § 7607(d)(7)(A)).

Even if the Court considers the information in Mr. McClellan's declaration, it does nothing to advance Petitioners' arguments because, like Petitioners' brief, Mr. McClellan only provides generalized and imprecise statements about the Board's review of "scientific and technical matters." His declaration is devoid of any specifics concerning the scientific or technical aspects of EPA's emission standards on which the Board may have provided comment. Mr. McClellan also

does not address the fact that there was no dispute in the rulemaking over the statutorily-mandated technology issues that EPA considered – technology availability, cost, and lead time.  Thus, Petitioners have given no factual support for their claim that EPA's emission standards were substantially likely to have been significantly changed.

This situation therefore is akin to that in *Coalition for Responsible Regulation*, where the Court found that even if EPA committed an alleged procedural error by not making the proposed regulation available to the Board, the petitioners failed to show that the error was of such central relevance that it was substantially likely the rule would have been significantly changed.  684 F.3d at 124.  In fact, Petitioners' case here for a finding of "central relevance" is considerably less compelling than that in *Coalition for Responsible Regulation* (where there was considerable controversy over the scientific basis for the Endangerment Finding) because here, as explained above, there is every reason to believe that even if the Board chose to provide comment on EPA's proposed emission standards, it would not have significantly changed the final Rule.  *Id.* at 120-22

Petitioners rely on *Kennecott Corp. v. EPA*, 684 F.2d 1007 (D.C. Cir. 1982) to argue that making the proposed standards available to the Board would have been substantially likely to significantly change the Rule.  Pet. Br. 25-26.  There,

the petitioners argued that EPA violated the procedural requirements of 42 U.S.C.

§ 7607(d) by failing to place "in the docket for public comment certain data

relating to the basis for its" action. *Kennecott*, 684 F.2d at 1018.  The issue was

EPA's failure to provide the public with notice of factual data and methodology on

which the regulation was based.  The Court found that such failure "ma[de]

impossible any meaningful comment on the merits of EPA's assertions." *Id.*  That

failure constituted "reversible error" because the "uncertainty that might be

clarified by those documents with respect to the test, the data, and the methodology

used by EPA . . . indicates a substantial likelihood that the regulations would have

been significantly changed." *Id.* at 1018-19 (citations and internal quotation marks

omitted).

The distinction between *Kennecott* and this case is that *Kennecott* involved a

notice and comment issue where the public had *no* opportunity to know the

complete basis for the Agency's decision.  Here, however, EPA is not alleged to

have withheld any information, and the public, as well as the Board, had full,

multiple opportunities for comment on the complete universe of data and

information that formed the basis for EPA's emission standards.  The only issue is

whether EPA's alleged failure to make the publicly available emission standards

directly available to the Board constituted sufficient error such that EPA should

have granted reconsideration.  As discussed above, however, there is nothing to

indicate that the Board would have provided any review and comment, or if so, on what issues the Board would have commented. Moreover, contrary to *Kennecott* where the Court was concerned about "uncertainty" that the omitted documents could clarify, there is no such uncertainty here. No information was omitted, no comments took serious issue with EPA's technological determinations, and no party substantively challenged EPA's emission standards. *Coal. for Responsible Regulation*, 684 F.3d at 126.

The bottom line is that Petitioners have failed to identify *any* scientific or technical issues with EPA's emission standards upon which the Board may have elected to provide comment and that would have been substantially likely to significantly change the rule. *See Appalachian Power Co. v. EPA*, 135 F.3d 791, 815 (D.C. Cir. 1998) (petitioners had "not attempted to identify any defect" in analysis and did not identify what "would have led to a significant change in the final rule"). Thus, even if EPA committed the alleged procedural error, EPA reasonably denied the Reconsideration Petition on the basis that even if the Board chose to provide comment, it would not have been substantially likely to significantly change EPA's emission standards.

43

## III.   VACATUR AND REMAND OF EPA's CAR RULE IS NOT AN APPROPRIATE REMEDY.

Petitioners repeatedly and erroneously ask for remand and vacatur of the Car Rule despite not having challenged the Car Rule.  *See* Pet. Br. 37-38.  Petitioners have challenged only EPA's Reconsideration Denial, so the *most* relief Petitioners conceivably could obtain here is vacatur and remand of that specific agency action. For the reasons discussed above, however, neither remedy is appropriate, particularly because there is no meaningful relief EPA could provide, *see supra* pp. 23-24, and any procedural infirmity does not rise to the level of seriousness warranting vacatur.

## CONCLUSION

For the foregoing reasons, the Court should deny petition.

Respectfully submitted,

SAM HIRSCH
Acting Assistant Attorney General

__/s/ *Michele L. Walter* _____
MICHELE L. WALTER
Environmental Defense Section
Environment and Natural Resources Div.
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044
Tel:  (202) 514-2795
Fax:  (202) 514-8865
Michele.Walter@usdoj.gov

44

*Counsel for Respondent*

OF COUNSEL

Steven Silverman
Office of General Counsel
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460
Tel:    (202) 564-5523

Oct. 22, 2014

## CERTIFICATE OF COMPLIANCE WITH WORD LIMITS

Pursuant to Fed. R. App. P. 37(a)(7)(C), and exclusive of the components of the brief excluded from the word limit pursuant to Fed. R. App. P. 32(a)(7)(B)(iii) and Circuit Rule 32 (a)(1), I certify that the foregoing Brief for Respondent contains 9,840 words, as counted by the "word count" feature of my Microsoft Office Word software.

 /s/ *Michele L. Walter*
MICHELE L. WALTER

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of the foregoing Opening Brief for Respondent via the Court's CM/ECF system on Oct. 22, 2014.

*/s/ Michele L. Walter*
MICHELE L. WALTER