ARGUED ON JANUARY 9, 2015
PANEL DECISION ENTERED APRIL 24, 2015

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

No. 13-1076
_____

CALIFORNIA CONSTRUCTION TRUCKING ASS'N, INC. ET AL.,
PETITIONERS,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENT.
_____

No. 11-1428
(Consolidated with 11-1441 and 12-1427)
_____

DELTA CONSTRUCTION COMPANY, INC. ET AL.,
PETITIONERS,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ET AL.,
RESPONDENTS.
_____

ON PETITIONS FOR REVIEW OF FINAL AGENCY ACTION OF THE
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
_____

**RESPONDENT EPA'S OPPOSITION TO PETITIONS FOR REHEARING EN BANC**

JOHN C. CRUDEN
ASSISTANT ATTORNEY GENERAL
ENVIRONMENT AND NATURAL
RESOURCES DIVISION

MICHELE L. WALTER
ENVIRONMENTAL DEFENSE SECTION
U.S. DEPARTMENT OF JUSTICE
P.O. BOX 7611
WASHINGTON, D.C. 20044
TEL: (202) 514-2795

FAX:  (202) 514-8865
MICHELE.WALTER@USDOJ.GOV


OF COUNSEL

Steven Silverman
Office of General Counsel
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460
Tel:   (202) 564-5523

JULY 13, 2015

# RESPONDENT'S CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), counsel for Respondent United States Environmental Protection Agency submits this certificate as to parties, rulings, and related cases.

## A.    Parties and *Amici*

### i.    Parties, Intervenors, and *Amici* Who Appeared in the District Court

This case is a petition for review of final agency actions, not an appeal from the ruling of a district court.

### ii.    Parties to These Cases

All parties appearing in this Court are listed in California Construction Trucking Ass'n, Inc., et al.'s Petition for Rehearing En Banc and Delta Construction Company, Inc., et al.'s Petition for Rehearing En Banc in the Addenda for both briefs at A-97-99.

## B.    Rulings Under Review

These coordinated cases involve review of two final actions by EPA:  (1) EPA's denial of a petition for reconsideration of a final rule known as the Car Rule. *See Denial of Reconsideration Petition on Model Year 2012-2016 Light-Duty Vehicle Greenhouse Gas Emissions Standards*, 78 Fed. Reg. 5347 (Jan. 25, 2013) ("Reconsideration Denial"); and (2) EPA's final rule entitled *Greenhouse Gas*

i

*Emissions Standards and Fuel Efficiency Standards for Medium- and Heavy-Duty Engines and Vehicles; Final Rule*, 76 Fed. Reg. 57,106 (Sept. 15, 2011) ("Truck Rule").

### C. Related Cases

Case Nos. 11-1428, 11-1441, and 12-1427 were consolidated petitions for review challenging the action *Greenhouse Gas Emissions Standards and Fuel Efficiency Standards for Medium- and Heavy-Duty Engines and Vehicles; Final Rule*, 76 Fed. Reg. 57,106 (Sept. 15, 2011) ("Truck Rule").[1]  Only Case No. 11-1428 involved the California Petitioners who have filed the Petitions for Rehearing En Banc.  Case No. 13-1076 is a petition for review by the California Petitioners challenging EPA's Reconsideration Denial concerning the "Car Rule."  On February 4, 2013, the Court ordered that the challenges to the Truck Rule and Reconsideration Denial be coordinated, such that briefing of the two challenges shall occur on the same schedule, and oral argument in the cases shall be scheduled on the same day before the same panel.  The panel Opinion for which California Petitioners seek rehearing en banc addressed all challenges in these coordinated cases.   Thus, although these cases are not "related" within the meaning of Circuit Rule 28(a)(1)(C), they were coordinated by this Court.

---

[1] Case Nos. 11-1441 and 12-1427 were petitions for review of a different petitioner who is not a party to the current Petitions for Rehearing En Banc.

Respectfully submitted,

JOHN C. CRUDEN
Assistant Attorney General

 /s/ *Michele L. Walter*
MICHELE L. WALTER, Attorney
United States Department of Justice
Environment & Natural Resources
      Division
P.O. Box 7611
Washington, D.C. 20044
Tel:  (202) 514-2795
Fax:  (202) 514-8865
Michele.Walter@usdoj.gov

OF COUNSEL

Steven Silverman
Office of General Counsel
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460
Tel:    (202) 564-5523

July 13, 2015

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................v

GLOSSARY....................................................................................................... vii

INTRODUCTION ...............................................................................................1

BACKGROUND ................................................................................................1

I.     EPA'S GREENHOUSE GAS EMISSION STANDARDS FOR
       CARS AND TRUCKS UNDER THE CLEAN AIR ACT ............................1

II.    THE PANEL'S APRIL 24, 2015 OPINION ...................................................3

STANDARD OF REVIEW ..................................................................................5

ARGUMENT .......................................................................................................6

I.     THE PANEL'S OPINION IS CONSISTENT WITH PRIOR
       DECISIONS OF THIS COURT AND THE SUPREME COURT ................6

II.    THE PETITION FOR REHEARING EN BANC DOES NOT
       RAISE ANY ISSUES OF "EXCEPTIONAL IMPORTANCE...................13

CONCLUSION .................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Crete Carrier Corp. v. EPA,*
363 F.3d 490 (D.C. Cir. 2004) ....................................................... 14

*Fla. Audubon Soc'y v. Bentsen,*
94 F.3d 658 (D.C. Cir. 1996) ........................................................ 6

*Jenkins v. Tatem,*
795 F.2d 112 (D.C. Cir. 1986) ................................................... 1, 5

*Larson v. Valente,*
456 U.S. 228 (1982) ............................................................. 4, 5, 8

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ................................................................. 6

*United States v. Lynch,*
690 F.2d 213 (D.C. Cir. 1982) ..................................................... 6

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.,*
429 U.S. 252 (1977) ............................................................... 4, 7

## RULES

Fed. R. App. P. 35(a) ............................................................... 1

Fed. R. App. P. 35(a)(1) ........................................................... 5

Fed. R. App. P. 35(a)(2) ........................................................... 5

## STATUTES

42 U.S.C. § 4365(c)(1) ........................................................... 3, 4

42 U.S.C. § 7521(a) ............................................................... 2

## FEDERAL REGISTERS

78 Fed. Reg. 5347 ................................................................................i

76 Fed. Reg. 57,106 ..............................................................  i, ii, 2, 10, 11

75 Fed. Reg. 25,324 ...........................................................  2, 10, 11

## GLOSSARY

CAA                    Clean Air Act

EPA                    Environmental Protection Agency

NHTSA              National Highway Traffic Safety Administration

## INTRODUCTION

The Court should deny the Petitions for Rehearing En Banc filed by

Petitioners Delta Construction Company, Inc. et al. (Case No. 11-1428, Dkt. No.

1555890) and California Construction Trucking Association, Inc. et al., (Case No.

13-1076, Dkt. No. 1555892) (collectively "California Petitioners").  The panel's

April 24, 2015 opinion ("Op.") in these coordinated cases turns on traditional rules

regarding the constitutional standing of California Petitioners.  California

Petitioners claim that the Opinion conflicts with decisions of the Supreme Court

and this Court, but that Opinion, in fact, is entirely consistent with those

precedents.  In addition, the Opinion concerning California Petitioners' lack of

standing raises no issues of "exceptional importance"; rather, it simply reflects the

routine application of jurisdictional standing requirements.  Because California

Petitioners have failed to meet the "demandingly high" standards for rehearing en

banc under Fed. R. App. P. 35(a), *Jenkins v. Tatem*, 795 F.2d 112, 114 (D.C. Cir.

1986), the Court should deny the Petitions.

## BACKGROUND

### I.     EPA'S GREENHOUSE GAS EMISSION STANDARDS FOR CARS AND TRUCKS UNDER THE CLEAN AIR ACT.

These coordinated cases involved, in pertinent part, two rulemakings by the

United States Environmental Protection Agency ("EPA" or "Agency") under the

Clean Air Act ("CAA" or "Act") Section 7521(a), 42 U.S.C. § 7521(a).  These rules established greenhouse gas emission standards for two different categories of vehicles:  (1) passenger cars, light-duty trucks and medium-duty passenger vehicles ("light-duty vehicles"), 75 Fed. Reg. 25,324 (May 7, 2010) ("Car Rule"); and (2) on-road heavy-duty vehicles and engines, 76 Fed. Reg. 57,106 (Sept. 15, 2011) ("Truck Rule").

EPA's issuance of the Car and Truck Rules under the CAA represented a collaborative effort with the National Highway Traffic Safety Administration ("NHTSA"), which simultaneously established *separate* but *harmonized* standards for cars ("corporate average fuel economy" standards) and trucks (fuel efficiency standards) under the Energy Policy and Conservation Act, as amended by the Energy Independence and Security Act (together the "Energy Act").  EPA's and NHTSA's rules for cars and trucks represented the first-ever collaborative nationwide program establishing standards to reduce greenhouse gas emissions, improve energy security, and increase fuel savings.  Not only did EPA and NHTSA coordinate their requirements, but California also agreed to accept compliance with EPA's rules as sufficient for purposes of California's generally more stringent rules for cars, and to adopt the federal rules for trucks.  This results in a national program allowing all car and truck manufacturers to build single car

and truck fleets that satisfies all federal requirements, as well as those of California

and other states that have adopted California's standards.

## II.     THE PANEL'S APRIL 24, 2015 OPINION

In Case No. 13-1076, California Petitioners challenged EPA's denial of their

administrative petition to reconsider the Car Rule.  In Case No. 11-1428, California

Petitioners challenged EPA's Truck Rule.  The basis for California Petitioners'

challenge in both cases was that EPA failed to comply with 42 U.S.C. § 4365(c)(1)

under the Environmental Research, Development, and Demonstration

Authorization Act to make the proposed emission standards available to the

Science Advisory Board.  California Petitioners did not challenge, in any respect,

NHTSA's fuel economy standards for cars or fuel efficiency standards for trucks,

nor did they substantively challenge EPA's Car or Truck Rule.

Based on EPA's arguments, the panel unanimously dismissed California

Petitioners' petitions for lack of constitutional standing.  The panel found that it

had "no need to consider whether the California Petitioners have properly alleged

an injury-in-fact because we agree with EPA that they have shown neither

causation nor redressability."  Op. at 9.  The panel relied on the fact that "EPA and

NHTSA collaborated on both the Car Rule and the Truck Rule, and that, for both

rules, the two agencies' requirements are substantially identical."  *Id.*  Moreover,

"both agencies' standards, jointly, are the source of the benefits and costs of the

3

National Program." *Id.* (internal quotation marks omitted).  Thus, even if the panel had vacated EPA's Car and Truck Rules, "the NHTSA standards would still increase the price of vehicles." *Id.*

Importantly, the panel noted that California Petitioners made *no* argument that any "EPA-specific portions cause a distinct injury that could be redressed by this court." *Id.* at 10.  Even if such a result was "theoretically possible[,]" however, the California Petitioners failed to meet their burden to establish standing because they "argue[d] neither that EPA's requirements independently cause a price increase nor that if EPA alone rescinded its standards vehicle manufacturers would sell cheaper products . . . ." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  Rather, California Petitioners specifically argued that EPA and NHTSA had established the "joint rule[s] [to] create[] an indivisible 'National Program . . .'" and, thus, NHTSA's standards could not be "bifurcated" from EPA's standards.  Op. at 10 (quoting California Petitioners' briefs).  The panel rightly rejected that argument, finding that "nothing in NHTSA's standards even suggests that they are dependent on EPA's standards – something government counsel confirmed at oral argument." *Id.* (citing Truck Rule Oral Arg. Rec. at 36:20).

Finally, the panel addressed two cases that California Petitioners' counsel raised "at oral argument", Op. at 10:  *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977) and *Larson v. Valente*, 456 U.S.

4

228 (1982).  During oral argument, California Petitioners cited these cases (which were neither cited nor relied upon in their briefs) to assert a new argument (which also was not contained in their briefs) that their injury was "redressable for standing purposes so long as a favorable decision would remove one of its multiple regulatory causes, even if the decision would fail to actually redress the injury." Op. at 10-11.  The panel rejected this interpretation of these cases and distinguished them on the grounds that the plaintiffs in those cases "challenged regulatory burdens that caused distinct harms" that could be redressed by a favorable decision that would relieve *that* distinct harm, even if such a decision did not relieve *every* injury.  *Id.* at 11.  The panel concluded that "[b]y contrast, the California Petitioners have failed to identify *a discrete injury* that a favorable decision by this court would remedy."  *Id.* (emphasis added).  California Petitioners' now claim that the panel's Opinion is inconsistent with *Arlington Heights* and *Larson*.

## STANDARD OF REVIEW

En banc review "is not favored and ordinarily will not be ordered unless" such "consideration is necessary to secure or maintain uniformity of the court's decisions" or "the proceeding involves a question of exceptional importance." Fed. R. App. P. 35(a)(1), (2).  This Court has emphasized that "[t]he standards for granting an en banc proceeding are demandingly high[,]" *Jenkins*, 795 F.2d at 114,

and that such review is "inappropriate" unless one of the two aforementioned

criteria are met.  *United States v. Lynch*, 690 F.2d 213, 215 (D.C. Cir. 1982)

## ARGUMENT

**I.    THE PANEL'S OPINION IS CONSISTENT WITH PRIOR DECISIONS OF THIS COURT AND THE SUPREME COURT.**

The panel's Opinion is entirely consistent with basic standing precedents

from both the Supreme Court and this Court.  Nonetheless, California Petitioners

claim that the panel's Opinion is inconsistent with the *Arlington Heights* and

*Larson* cases.[2]  The panel, however, specifically discussed and properly

distinguished those cases, *see* Op. at 11, and California Petitioners have failed to

show how the panel's Opinion is inconsistent with those cases.  Indeed, their

argument is nothing more than a disagreement with the panel's application of those

precedents, which is an insufficient ground on which to seek rehearing en banc.[3]

---

[2] California Petitioners also claim that the panel's Opinion "conflicts with several decisions of the United States Supreme Court and this Court" and cites *Lujan*, 504 U.S. 555 and *Florida Audubon Society v. Bentsen*, 94 F.3d 658 (D.C. Cir. 1996), in addition to *Arlington Heights* and *Larson*.  Pet. at 1.  They fail to substantively argue, however, how the panel's Opinion conflicts with *Lujan* and *Bentsen* and, instead, merely cite those cases for general standing propositions.  *See* Pet. at 12.

[3] California Petitioners did not cite or rely on *Arlington Heights* or *Larson* in their briefs, nor did they assert the argument they now make based on those cases – that their alleged injuries were redressable because vacatur of EPA's Truck Rule or Reconsideration Denial would be sufficient to redress California Petitioners' injuries, *even if* the NHTSA standards remained in effect.  The first mention by California Petitioners of these two cases and that particular argument was during

(con't . . .)

6

Contrary to California Petitioners' arguments, this case does not parallel the situations in *Arlington Heights* and *Larson* and those cases do not support California Petitioners' standing.  Pet. at 6-12.  As the panel correctly pointed out, both cases involved "regulatory burdens that caused distinct harm[,]" Op. at 11, which is not the situation here with EPA's and NHTSA's standards.  Specifically, *Arlington Heights* involved a situation where the discrete injury alleged by the plaintiff (denial of a rezoning classification) was only one of *several* barriers that existed before the real estate developer could build a housing project.  *Arlington Heights*, 429 U.S. at 261-62.  The Supreme Court explained that the zoning decision stood "as an absolute barrier to constructing" the project and if the plaintiff obtained the requested zoning relief "that barrier [would] be removed[,]" even if additional barriers, such as obtaining funding and completing construction, remained. The existence of those other barriers did not preclude a finding that the plaintiff had demonstrated a discrete injury from the rezoning classification itself that could be redressed by a favorable decision.  *Id.* at 262.  Similarly, in *Larson*, if the challenged rule had been vacated, the plaintiff would not be required to register and report under the applicable charity act, even though it could be required to register under the act by virtue of other rules.  The fact that other rules ultimately

oral argument here.  Yet, these two cases and that particular argument now are the primary basis on which California Petitioners seek rehearing en banc.

may have applied to the plaintiffs did not prevent the plaintiffs from having a discrete injury caused by the challenged rule that could be redressed by a decision on that rule.  456 U.S. at 242-43.

California Petitioners argue that these two cases support their standing because, under their interpretation, these cases stand for the proposition that an injury is redressable if a favorable decision would remove one of several causes of injury, even if that decision does not relieve *every* injury.  *See* Pet. at 5 (citing Oral Arg. Tr. at 26-27); Op. at 10-11.  Although California Petitioners did not make this argument in their briefs to support their standing,[4] the panel properly rejected Petitioners' interpretation, explaining that these cases do not support "such an exotic quirk of [the] redressability doctrine . . . ."  Op. at 11.  Instead, "these cases stand for the more pedestrian proposition that 'a plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself' and 'need not show that a favorable decision will relieve his *every* injury.'"  *Id.* (quoting *Larson*, 456 U.S. at 243 n.15) (emphasis in original).

Conversely here, as the panel found, California Petitioners made *no* attempt to make the type of showing that the plaintiffs in *Arlington Heights* and *Larson* made to demonstrate that there was a discrete injury from the specific challenged

_____

[4] California Petitioners made other arguments in their reply briefs to support redressability, but have not raised those arguments in these rehearing Petitions.

action that could be redressed by a favorable decision. Indeed, as California

Petitioners even acknowledged in the declarations supporting their standing, any

increased vehicle costs are attributable to NHTSA's standards *as well as* EPA's

standards. *See* EPA Truck Rule Br. at 35-36 (citing California Petitioners'

Declarations); EPA Car Rule Br. at 23 (citing California Petitioners' Declarations).

They reiterate that acknowledgement in their Petition by stating that "there is no

evidence in the record that the NHTSA fuel economy rules, standing alone without

the EPA greenhouse gas emission[] rules, would have as great an impact upon the

costs of the California Petitioners as the combined rules acting in tandem." Pet. at

10-11; *see id.* at 9 ("there is no evidence that those standards, without the

greenhouse gas emission standards, will cause the same out-of-pocket expenses to

the California Petitioners as the joint standards operating in tandem.").

　　California Petitioner's would have the Court believe that this lack of

evidence supports their redressability argument and that it was EPA's burden to

produce evidence that increased costs under EPA's and NHTSA's rules would be

the same. Quite the contrary: California Petitioners had the burden to demonstrate

a discrete injury, *i.e.*, additional increased costs, caused only by EPA's standards as

opposed to both EPA's and NHTSA's standards. If California Petitioners claim

that EPA's actions caused concrete and particularized injuries that would be

present regardless of NHTSA's standards, they had the burden to demonstrate

those injuries and show how such injuries would be redressed by a favorable ruling on EPA's standards. As the panel correctly found, "even were we to vacate the EPA standards, the NHTSA standards would still increase the price of vehicles." Op. at 9. Thus, the panel concluded that California Petitioners did not meet their burden because they failed "to identify a discrete injury that a favorable decision by this court would remedy." *Id.* at 11.

California Petitioners' mere disagreement with the panel's conclusion not only is insufficient to support rehearing, but is also incorrect. Here, although cars and trucks each have two parallel but independent standards – EPA's standards under the Clean Air Act and NHTSA's standards under the Energy Act – those standards cause the same alleged injury to California Petitioners, *i.e.*, increased costs, because the technologies, compliance strategies, and compliance procedures used to meet those parallel but independent standards essentially are the same. Specifically, EPA collaborated with NHTSA to establish a nationwide program so that vehicle manufacturers would have substantially identical standards with which to comply for purposes of meeting EPA's greenhouse gas emission standards and NHTSA's fuel economy (for cars) or fuel efficiency (for trucks) standards. *See* Op. at 6 (quoting 76 Fed. Reg. at 57,125 ("[c]ompliance by a truck manufacturer with the NHTSA fuel economy rule assures compliance with the EPA rule, and vice versa.")); Op. at 5 (quoting 75 Fed. Reg. at 25,330 (EPA's and NHTSA's

10

standards "represent a harmonized approach that will allow industry to build a single national fleet that will satisfy both" requirements)); Op. at 9.  Accordingly, although EPA's and NHTSA's standards are *separate* rulemakings, the agencies harmonized their respective standards so that vehicle manufacturers can meet *both* standards using the same technology, the same compliance strategies, and a single compliance mechanism.  *See* 75 Fed. Reg. at 25,329 (Car Rule) ("This joint rule will allow automakers to meet both the NHTSA and EPA requirements with a single national fleet, greatly simplifying the industry's technology, investment, and compliance strategies."); 76 Fed. Reg. at 57,110 (Truck Rule) ("The technologies available for improving fuel efficiency, and therefore for reducing both [carbon dioxide] emissions and fuel consumption, are one and the same.").

Given the harmonized nature of EPA's and NHTSA's separate, but coordinated standard, this is not a situation as in *Arlington Heights* and *Larson* where the plaintiffs had demonstrated discrete injuries that specifically would be remedied by a favorable decision on the challenged actions, despite the possibility of additional, *distinct* injuries from other regulatory actions.  Here, California Petitioners alleged only one generalized injury – increased costs – and failed to meet their burden of demonstrating any discrete injury from increased costs that is linked specifically to EPA's Rules rather than NHTSA's standards such that the discrete injury would be remedied if EPA's Rules were vacated.  Again, as

11

mentioned *supra* at 9, California Petitioners even emphasize that there is no evidence of any such discrete injury from EPA's Rules.  California Petitioners – not EPA – were required to produce such evidence if they wanted to demonstrate a discrete injury that would redressable by a favorable decision on EPA's Rules, and the panel correctly found that California Petitioners failed to do so.  Op. at 9-10.

Finally, California Petitioners' disagreement with the fact that NHTSA's standards would remain even if EPA's standards were vacated also is an insufficient basis on which to grant rehearing en banc.  California Petitioners repeatedly have claimed, contrary to all basic principles of administrative law, that NHTSA's standards cannot survive if EPA's standards are vacated.  Pet. at 13.  EPA explained and the Court agreed that this argument was incorrect.  Op. at 10.  California Petitioners never challenged NHTSA's separate rulemakings and so to argue that their challenge to EPA's Truck Rule and Reconsideration Denial could invalidate NHTSA's rules by proxy is absurd from an administrative law standpoint.  Again, NHTSA's standards are *separate* agency actions that simply harmonized greenhouse gas emission standards with fuel economy or efficiency standards so that manufacturers could meet both EPA's and NHTSA's standards through the same technologies.  Those same technologies and compliance strategies cause the *same* alleged injuries asserted by California Petitioners, who

failed to make any showing that their alleged injuries were attributable specifically to EPA's standards rather than to EPA's and NHTSA's standards together.

For these reasons, California Petitioners have failed to identify any law that the panel overlooked or with which the panel's Opinion is inconsistent. They merely disagree with how the panel applied basic standing principles to the circumstances of this case. That is not a ground for rehearing en banc.

## II. THE PETITION FOR REHEARING EN BANC DOES NOT RAISE ANY ISSUES OF "EXCEPTIONAL IMPORTANCE."

Finally, California Petitioners have not identified any issue of "exceptional importance" arising out of the panel's Opinion. As noted, the panel relied on well-established and oft-applied rules of constitutional standing, which strictly require a petitioner to meet its burden of proof with evidence in the record or submitted with petitioners' opening briefs. The panel's Opinion does not add anything new to the Circuit's standing precedent, nor does it create uncertainty with regard to whether regulated parties can challenge agency decisions.

California Petitioners rely on a statement from the panel that "it is theoretically possible that the EPA-specific portions cause a distinct injury that could be redressed by the court." Pet. at 14 (quoting Op. at 10). That statement by the panel does not cast any doubt on the panel's standing analysis or create an issue of "exceptional importance." First, as the panel stated, California Petitioners

13

"ma[d]e no such argument" that EPA-specific standards caused discrete injuries. Op. at 10. Second, this statement by the panel is entirely consistent with *Crete Carrier Corp. v. EPA*, 363 F.3d 490, 493-94 (D.C. Cir. 2004), on which the panel relied. There, the Court recognized that "[i]t is possible, of course, that but for" the challenged standard, the companies could be able to purchase a vehicle from manufacturers who would choose not to comply with that standard. In *Crete Carrier*, however, as well as here, "that possibility is sheer speculation" and "there is no record evidence to support" such possibility. *Id.* at 494. Indeed, Petitioners once again admit as much: "there is no evidence that the NHTSA . . . standard, standing alone, would create the same price hike as the joint EPA/NHTSA rule, standing together." Pet. at 11. Thus, the fact that there may be a theoretical possibility that California Petitioners did not argue or substantiate does not create any issue of "exceptional importance" for which they have been denied redress.

Finally, California Petitioners claim they have a "fundamental right to an independent judicial evaluation of grievances, especially against government action . . . ." Pet. at 13. Nothing in the panel's Opinion undermines any such fundamental rights or forecloses the possibility that other petitioners – who meet their burden to demonstrate their standing – can receive judicial review of their

grievances.  The panel's Opinion merely serves as a reminder to litigants that a

petitioner seeking review of agency action must demonstrate its standing.[5]

## CONCLUSION

For the foregoing reasons, the Court should deny the petition for rehearing.

Respectfully submitted,

JOHN C. CRUDEN
Assistant Attorney General

__/s/ *Michele L. Walter* _____
MICHELE L. WALTER
Environmental Defense Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044
Tel:  (202) 514-2795
Fax:  (202) 514-8865
Michele.Walter@usdoj.gov

*Counsel for Respondent*

OF COUNSEL

_____

[5] Moreover, although the Court did not address this point, EPA explained that California has adopted standards for both cars and trucks that would apply in the absence of federal standards and that would cause the same alleged injuries (or, in the case of the California car standards, worse injuries) about which California Petitioners complain.  EPA Car Rule Br. at 22; EPA Truck Rule Br. at 35; California Rule 28 (j) letter of December 16, 2014.  Thus, even without EPA's or NHTSA's standards, California Petitioners' alleged injuries would still exist by virtue of California's separate standards.  Given this further barrier to redressability, this case is particularly inappropriate for en banc review.

Steven Silverman
Office of General Counsel
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460
Tel:    (202) 564-5523
July 13, 2015

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of the foregoing for Respondent EPA's Opposition to Petitions for Rehearing En Banc via the Court's CM/ECF system on July 13, 2015.

*/s/ Michele L. Walter*
MICHELE L. WALTER